UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JULIE ANN DAHLSTROM, et al.,

                 Plaintiffs,

       v.

U.S. DEPARTMENT OF HOMELAND
SECURITY,

                 Defendant.

Civil Action No. 22-1165 (JMC)

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

*MATTHEW M. GRAVES*
United States Attorney

*BRIAN P. HUDAK*
Chief, Civil Division

*BRENDA GONZÁLEZ HOROWITZ*
Assistant United States Attorney
U.S. Attorney's Office for the District of
Columbia

June 3, 2022

## CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 3

    I.   Statutory and Regulatory Background ............................................................... 3

    II.  USCIS's FOIA Workload ................................................................................ 4

        A.  The August 7, 2020 Request ..................................................................... 7

        B.  The August 21, 2020 Request ................................................................... 8

        C.  The January 2022 Request ....................................................................... 11

STANDARD OF REVIEW ............................................................................................... 16

ARGUMENT .................................................................................................................... 17

    I.   Preliminary Injunctions are Generally Inappropriate in FOIA Cases ............... 17

    II.  Plaintiffs' Fail to Meet Their Heavy Burden to Show Entitlement to Emergency,
        Mandatory Relief ......................................................................................... 22

        A.  Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits ......... 22

        B.  Plaintiffs Have Failed to Establish that They Will Suffer Irreparable Harm ........ 25

        C.  The Balance of Equities and the Public Interest Weigh Against a Preliminary Injunction ............................................................................................ 29

CONCLUSION ................................................................................................................. 32

# AUTHORITIES

**Cases**                                                                 **Page(s)**

*Aguilera v. FBI*,
    941 F. Supp. 144 (D.D.C. 1996) ........................................................... 26

*Al-Fayed v. CIA*,
    Civ. A. No. 00-20292, 2000 WL 34342564 (D.D.C. Sept. 20, 2000) .................................... 19

*Allied Progress v. Consumer Fin. Prot. Bureau*,
    Civ. A. No. 17-0686 (CKK), 2017 WL 1750263 (D.D.C. May 4, 2017) ........................ 17, 19

*Am. Immigr. Couns. v. Dep't of Homeland Sec.*,
    470 F. Supp. 3d 32 (D.D.C. 2020) .................................................... 20, 21

*Am. Oversight v. Dep't of State*,
    414 F. Supp. 3d 182 (D.D.C. 2019) ........................................................... 26

*Aronson v. Dep't of Hous. & Urban Dev.*,
    869 F.2d 646 (1st Cir. 1989) ........................................................... 19

*Baker v. Consumer Fin. Prot. Bureau*,
    Civ. A. No. 18-2403 (CKK), 2018 WL 5723146 (D.D.C. Nov. 1, 2018) ................. 29, 31-32

*Beta Steel Corp. v. NLRB*,
    Civ. A. No. 97-0358,1997 WL 836525 (N.D. Ind. Oct. 22, 1997) ....................................... 19

*Carlson v. U.S. Postal Serv.*,
    No. 02-5471, 2005 WL 756573 (N.D. Cal. Mar. 31, 2005) .................................................. 19

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006) ........................................................... 17

*CityFed Fin. Corp. v. Office of Thrift Supervision*,
    58 F.3d 738 (D.C. Cir. 1995) ........................................................... 16

*Cobell v. Kempthorne*,
    455 F.3d 301 (D.C. Cir. 2006) ........................................................... 17

*Cobell v. Norton*,
    391 F.3d 251 (D.C. Cir. 2004) ........................................................... 16

*Ctr. for Pub. Integrity v. Dep't of Def.*,

    411 F. Supp. 3d 5 (D.D.C. 2019) ........................................................... 26

*Daily Caller v. U.S. Dep't of State*,

    152 F. Supp. 3d 1 (D.D.C. 2015) ........................................... 3, 18, 28, 31

*Dorfmann v. Boozer*,

    414 F.2d 1168 (D.C. Cir. 1969) (per curiam) ........................................ 18

*Elec. Info. Privacy Ctr. v. Dep't of Just.*,

    15 F. Supp. 3d 32 (D.D.C. 2014) ................................ 17, 19, 22, 28, 30

*Friends of Animals v. U.S. Bureau of Land Mgmt.*,

    Civ. A. No. 17-0136, 2017 WL 499882 (D.D.C. Feb. 7, 2017) ............ 16

*Hubbard v. United States*,

    496 F. Supp. 2d 194 (D.D.C. 2007) ....................................................... 22

*In re Navy Chaplaincy*,

    534 F.3d 756 (D.C. Cir. 2008) ............................................................... 25

*Landmark Legal Found. v. EPA*,

    910 F. Supp. 2d 270 (D.D.C. 2012) ....................................................... 19

*Long v. Dep't of Homeland Sec.*,

    436 F. Supp. 2d 38 (D.D.C. 2006) ......................................................... 19

*Munaf v. Green*,

    553 U.S. 674 (2008) ....................................................... 16, 18, 28, 29

*Nat'l Conf. on Ministry to the Armed Forces v. James*,

    278 F. Supp. 2d 37 (D.D.C. 2003) .................................................. 17-18

*Nken v. Holder*,

    556 U.S. 418 (2009) ............................................................................... 16

*Pinnacle Armor, Inc. v. United States*,

    Civ. A. No. 07-1655, 2008 WL 108969 (E.D. Cal. Jan. 7, 2008) .......... 19

*Protect Democracy Project, Inc. v. Dep't of Def.*,

    263 F. Supp. 3d 293, 301–02 (D.D.C. 2017) ............................... *passim*

*The Nation Magazine v. Dep't of State*

    805 F. Supp. 68, 74 (D.D.C. 1998) ........................................................ 30

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) ............................................................................................... 18

*Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*,
    259 F.2d 921 (D.C. Cir. 1958) ............................................................................. 16

*Wadelton v. Dep't of State*,
    941 F. Supp. 2d 120 (D.D.C. 2013) ..................................................................... 19

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841–43 (D.C. Cir. 1977) ....................................................................... 16

*Wash. Post v. Dep't of Homeland Sec.*,
    459 F. Supp. 2d 61 (D.D.C. 2006) ....................................................................... 26

*Wiedenhoeft v. United States*,
    189 F. Supp. 2d 295 (D. Md. 2002) ..................................................................... 19

*Wis. Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) (per curiam) ................................................. 25, 26

**Statutes**

5 U.S.C. § 552 .................................................................................................... *passim*
8 U.S.C. § 1367 .................................................................................... 15, 16, 24-25

**Other**

6 C.F.R. § 5.5 ......................................................................................................... 4, 25

## INTRODUCTION

This Court should deny Plaintiffs Julie Dahlstrom and Heba Gowayed's motion for a preliminary injunction, which seeks to jump the line on all other FOIA requesters—in their own request for a broad swath of data relating to United States Citizenship and Immigration Services ("USCIS"), a component of the United States Department of Homeland Security ("DHS"), adjudication of T-1 visas. This Court has mostly denied requests for a preliminary injunction in the Freedom of Information Act ("FOIA") context, and for good reason. Precedent dictates that for Plaintiffs to demonstrate irreparable harm when seeking a mandatory injunction, they must meet an exceedingly high bar that has not been satisfied in this case.

USCIS receives approximately twenty five percent of all FOIA requests submitted to the entire federal government. The numbers submitted to this single agency (one of more than one hundred agencies and components subject to FOIA) is staggering; yet the steady climb of requests submitted in the last several years indicates only an upward trajectory.   In fiscal year 2021, the agency received over 230,000 FOIA requests, accounting for more than half of all FOIA requests sent to its parent agency, DHS.[1]   For the first half of fiscal year 2022, USCIS has averaged approximately 23,000 FOIA requests *per month*; a rate which will equate to approximately 17 percent more than that received in fiscal year 2021 if the numbers remain steady for the second half of the year.  Among the huge volume of requests received by USCIS were three requests from Plaintiffs, two submitted in August 2020 and one submitted in January 2022 (the "2022 request"), seeking certain records pertaining to the adjudication of T-1 visa applications.  Notwithstanding

---

[1]      *See* Declaration of Cynthia Munita ("Munita Decl."), attached hereto as Exhibit 1. During fiscal year 2021, DHS received 442,650 FOIA requests and responded to 467,347 requests, but ended the year with a backlog of 25,102 requests – only six percent of the total number of requests received.  *See* FOIA Annual Report, Fiscal Year 2021 (February 2022), https://www.dhs.gov/sites/default/files/2022-03/FY%2021%20DHS%20Annual%20FOIA%20Report.pdf (last accessed May 31, 2022).

that only the 2022 request as modified was granted expedited processing on March 31, 2022, Plaintiffs now seek an order requiring USCIS to produce responsive records purportedly for all three FOIA requests within thirty days.[2]  This request should be denied.

The type of emergency relief Plaintiffs seek is typically considered inappropriate in FOIA cases, and any "emergency" Plaintiffs contend exist is undercut by the length of time that has passed since Plaintiffs submitted their first requests to USCIS. That Plaintiffs waited almost two years to seek expedited processing and bring this motion for extraordinary relief in the way of an injunction to produce similar data as was sought in 2020 underscores that Plaintiffs' emergency is no real emergency at all. Simply put, while Plaintiffs may be frustrated by waiting in line for records they contend they are entitled to, Plaintiffs fail to carry their heavy burden of demonstrating entitlement to an injunction, much less a mandatory one that would require Defendant to alter the status quo. This is especially true in light of the fact that USCIS is already providing priority treatment to the 2022 request (as modified) and expects to produce responsive records within the next month.

---

[2]    The introduction of Plaintiffs motion for a preliminary injunction begins by referencing Dahlstrom's August 7, 2020, FOIA request and erroneously stating that on October 2, 2020 "USCIS granted the requests." Pls.' Mot. at 1, ECF No. 5. Plaintiffs are incorrect. The letter from USCIS on October 2 merely acknowledged the August 21 request; it did not "grant" the request, and it did not notify Plaintiffs that they would be entitled to the immediate production of records. Importantly, neither of the two requests submitted in 2020 were granted expedited processing, and Plaintiffs agreed in April 2022 to withdraw portions of each of the 2020 requests and instead receive records for certain portions under Plaintiffs' 2022 FOIA request, which was granted expedited processing on March 31, 2022. Further confusing the matter, under section 2 of Plaintiffs' motion, titled "Plaintiffs' Requests" (Pls.' Mot. at 9), Plaintiffs refer only to the 2022 request.  Plaintiffs have therefore waived the ability to seek the immediate production of records falling outside the 2022 request.  Thus, to the extent Plaintiffs seek an order from this Court mandating the immediate production of records responsive to the 2020 requests that do not overlap with the 2022 request (and for which USCIS did not grant expedited processing), the Court should decline to entertain that request.

First, Plaintiffs' fail to show that they are likely to succeed on the merits as FOIA does not mandate immediate release of records that surpass the twenty or, in unusual circumstances, thirty-day response time, nor does it mandate agencies to produce records granted expedited processing within a certain timeframe, other than "as soon as practicable." In short, Plaintiffs' legal claim is nothing more than a complaint that more than twenty days have passed since the submission of their FOIA requests. But the remedy for such a claim is constructive exhaustion of administrative remedies and the opportunity for court supervision of the processing and production—not an order for immediate release of all records or even release within 30 days as sought by Plaintiffs. Plaintiffs' also fail to show that they are likely to suffer actual, irreparable harm if their FOIA requests are not completely processed and released within thirty days. Finally, the balance of harms and public interest favor allowing USCIS to maintain the status quo and complete the processing of Plaintiffs' 2022 request, which has already been granted expedited processing and is being prioritized. There is no reason for the Court to impose a different timeframe for production of the records subject to expedited processing than the time already prescribed, i.e., as soon as "practicable". Accordingly, Plaintiffs' request for a preliminary injunction should be denied.

## BACKGROUND

I.  <u>**Statutory and Regulatory Background**</u>

Agencies ordinarily process FOIA requests for agency records on a first-in, first-out basis. *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 8 (D.D.C. 2015) (citing *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976)). In 1996, Congress amended the FOIA to provide for "expedited processing" of certain categories of requests. *See* Electronic Freedom of Information Amendments of 1996 ("EFOIA"), Pub. L. No. 104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E)). Expedition, when granted, entitles requesters to move immediately to the front of the applicable processing queue, ahead of requests filed previously by

other persons, but added to a queue of other outstanding requests granted expedited processing. As explained in DHS regulations, "[c]omponents ordinarily will respond to requests according to their order of receipt." 6 C.F.R. § 5.5(a). "If expedited processing is granted, the request shall be given priority, placed in the processing track for expedited requests, and shall be processed as soon as practicable." *Id.* § 5.5(e)(4); *see also* 5 U.S.C. § 552(a)(6)(E)(iii).

FOIA requests to individual DHS components are typically processed by those components' FOIA offices. In this case, the underlying FOIA requests were submitted to USCIS and therefore processed by USCIS's FOIA and Privacy Act Unit. *See* Munita Decl. ¶¶ 1-3.

## II.    **USCIS's FOIA Workload**

USCIS is one of 118 federal agencies and components subject to FOIA and receives nearly 25% of the total requests submitted to the federal government.   Munita Decl. ¶ 4; *see* http://www.FOIA.gov (last accessed May 31, 2022). In recent years, USCIS has experienced a significant increase in FOIA requests.  *Id*.  For example, during fiscal year ("FY") 2016, USCIS received 166,732 FOIA requests.  *Id*.  During FY 2020, USCIS received 195,930 FOIA requests while the entire government received 790,000 requests.  *Id*. Thus, USCIS accounted for almost one quarter of all requests to the entire federal government in FY 2020.  *Id*.

By FY 2021, the number of requests to USCIS increased to 235,210, which represents over half of the total requests received by DHS (442,650) and a 41% increase over the last five-year period.   Munita Decl. ¶ 5. During the first eight months of FY 2022, USCIS has already received 160,656 new requests, which is an average of almost 23,200 requests per month.  *Id*.  If USCIS were to continue to receive requests at the same rate over the remainder of the fiscal year, it would be on track to receive more than 278,400 requests—an almost 20 percent increase over the last fiscal year. *Id*.

In addition to increased quantity of FOIA requests, the agency has also experienced an increase in the complexity of requests and the volume of records sought by requesters. Munita Decl. ¶ 6. Managing the higher volume of records also presents its own challenges with information technology infrastructure, technology, and workforce constraints. *Id.* While the majority of FOIA requests received by USCIS are filed by individuals seeking access to A-Files[3], USCIS also receives a significant number of non-A-File FOIA and Privacy Act requests for agency policies, data, communications, and other records. *Id.* ¶ 7.

The USCIS National Record Center ("NRC") Significant Interest Group ("SIG") team handles FOIA requests for non-alien file records on behalf of the agency. Munita Decl. ¶ 8. Upon receipt of such a request, a FOIA staff member reviews the request and determines if it is a valid FOIA request, its precise nature and scope, and whether the request requires additional clarification. *Id.* If additional clarification is required, the FOIA staff member will reach out to the requester to request such clarification. *Id.* Once the FOIA staff member has received clarification, if required, and determined the contours of the request, he or she will then determine agency offices that may have potentially responsive records based on the specific missions and work of each office and directorate and assign the request to those offices to conduct a search. *Id.* ¶ 9. Once the search is completed, the offices tasked with conducting a search provide the potentially responsive records to the NRC. *Id.* ¶ 10.

---

[3]     A-files are a series of records maintained on a person that document the person's immigration history. A-files are created when an application or petition for a long-term or permanent benefit is received, or when enforcement action is initiated. A-files may exist in physical format, or they may be created in digital format in various electronic case management systems, or they may be a hybrid of both paper and electronic files. *See* USCIS Policy Manual, Volume 1, Part E, Chapter 2 located at https://www.uscis.gov/policy-manual/volume-1-part-e-chapter-2. *See* Munita Decl. ¶ 7 n.1.

USCIS uses an electronic case management system called the FOIA Immigration Records System ("FIRST") to create, control, and process all incoming FOIA requests. Munita Decl. ¶ 11. USCIS employees conducting searches for records responsive to a FOIA request often send those records to the USCIS FOIA office in various file formats. *Id*. To consolidate these records for processing, all records are converted to PDF format and stripped of all metadata for security purposes before they are uploaded into FIRST. *Id*. As a result, records processed in FIRST are in bulk volumes of pages, rather than individual files in their native format. *Id*. While processing records in FIRST, the FOIA processor reviews every page of the potentially responsive records to determine whether the information falls within the scope of the request, needs to be referred to another government agency, is a duplicate, or is subject to an exemption pursuant to the FOIA. Munita Decl. ¶ 12. FIRST does not have the capability to electronically identify duplicate documents from a set of records in FIRST for processing. *Id*.

Given the increase in the amount of FOIA and Privacy Act requests over the last several years, as well as the voluminous amounts of records responsive to complex requests, the NRC FOIA Office may also work with requesters in order to narrow the scope of complex requests or revise requests in the attempt to provide records in a more efficient fashion or to reduce the amount of records that the agency needs to process, so that requesters can receive the information sought expeditiously while removing extraneous documents that due to the broad wording of a request may have been deemed "responsive" but are actually outside of the subject matter of the request itself. Munita Decl. ¶ 13. This process is dependent on the cooperation of the requester and the subject matter of each request. *Id*.

There are currently twenty-two SIG staff responsible for handling non-A-File requests, many of which involve responsive records with page counts exceeding 10,000 pages. Munita

Decl. ¶ 14. SIG has twelve FOIA processors, five of which are responsible for processing all matters in litigation. *Id.* The remaining seven SIG processors are responsible for processing all other SIG requests not in litigation, as well non-A-file cases processed pursuant to a remand from an administrative FOIA appeal and Privacy Act amendment requests. *Id.* SIG currently has 72 litigation matters, some of which consist of multiple FOIA requests. *Id.*

Each SIG processor has multiple competing priorities, and handles multiple cases, many of which involve rolling monthly productions. Munita Decl. ¶ 15. In addition to processing records for various litigation releases, members of the SIG FOIA litigation team also assist agency counsel in preparing answers upon receipt of new complaints, constantly provide updates and edits to periodic joint status reports that are required in many of the FOIA litigations, and provide support for Declarations and *Vaughn* indices that are filed in FOIA litigation. *Id.* The team also has duties that do not relate directly to litigation; for instance, they are frequently called upon to train new employees, create reports, and assist with highly complex FOIA requests outside litigation. *Id.*

### III.    Plaintiffs' FOIA Requests

#### A.    The August 7, 2020 Request

On August 7, 2020, the NRC FOIA Office received a FOIA request from Plaintiff Dahlstrom seeking "information relating to the discretionary adjudication of applications for T-1 nonimmigrant status[.]" *See* Munita Decl. ¶¶ 16-17, Ex. A. In that request, Dahlstrom sought eleven categories of records, which included certain policies, orders, notices directives, memoranda, checklists, templates, training materials, or other paper work issued between January 1, 2017 and July 1, 2020 and records referencing a specified July 15, 2020 policy, as well as yearly data from 2017 through July 1, 2020 relating to the adjudication of applications for T-1 visas and

statistical analyses of such applications completed from January 1, 2017 through July 1, 2020. *See id*. Dahlstrom did not seek expedited processing for this request. *Id*. In a letter dated August 17, 2020, USCIS informed Dahlstrom that her FOIA request was assigned FOIA control number COW2020002022 and that the request would be responded to on a first-in, first-out basis and on a multi-track system. Munita Decl. ¶ 18; Ex. B. Dahlstrom was also informed that her request had been placed in the complex track and that USCIS was invoking a 10-day extension pursuant to 5 U.S.C. 552 § (a)(6)(B). *Id*. Finally, USCIS sought clarification regarding the first subset of records in the request, noting that it did not find that Dahlstrom adequately described the records sought and provided her thirty days to clarify item (a). *Id*.

In a letter dated September 4, 2020, which was provided via an email to USCIS, Dahlstrom provided clarification regarding USCIS's request for clarification, explaining that she is "seeking records that identify the number of T-1 nonimmigrant status application rejections, Requests for Evidence and Notices of Intent to Deny issued since January 1, 2017" and "records that identify the average processing time from receipt of application to adjudication since January 1, 2017. If such information has been compiled, in whole or in part, in any analysis of T-1 nonimmigrant status applications, then I would like to obtain such analysis." Munita Decl. ¶ 19; Ex. C. Dahlstrom's request was assigned to the appropriate USCIS offices to conduct a search. Munita Decl. ¶ 20. The NRC FOIA Office was provided approximately nine-thousand pages of potentially responsive records, along with Excel spreadsheets. *Id*.

### B. The August 21, 2020 Request

On August 21, 2020, the NRC FOIA Office received a second FOIA request from Dahlstrom seeking "information relating to the discretionary adjudication of applications for T-1 nonimmigrant status[.]" *See* Munita Decl. ¶¶ 21-22; Ex. D. Unlike the August 7 request, the

August 21 request sought only seven different categories of records, including all denials, requests for evidence, notices of intent to deny, notices to appear, rejection notices and notices of intent to revoke issued between January 1, 2017 through July 1, 2020, along with "any statistical analysis of applications for T-1 nonimmigrant status completed from January 1, 2014 through December 31, 2016, including statistical analyses of rejections, Requests for Evidence, or Notices of Intent to Deny of applications for T-1 nonimmigrant status or statistical analyses of the time between submission and the issuance of a decision on an application for T-1 nonimmigrant status." *Id*. Dahlstrom did not seek expedited processing for this request. *Id*.

In a letter dated September 4, 2020, Plaintiff Dahlstrom was informed that her FOIA request was assigned FOIA control number COW2020002204. Munita Decl. ¶ 23.   The NRC FOIA Office also sought clarification regarding item (g) noting that it did not find that Plaintiff Dahlstrom adequately described the records sought and provided her 30 days to clarify item (g). *Id*.

In an email sent on September 23, 2020, Dahlstrom provided USCIS a letter dated September 23, 2020, clarifying item (g), explaining that she is "seeking records that identify the number of T-1 nonimmigrant status application rejections, [Requests for Evidence and Notices of Intent to Deny] issued between January 1, 2014 and December 31, 2016" and "records that identify the average processing time from receipt of application to adjudication between January 1, 2014 and December 31, 2016.  Munita Decl. ¶ 24.  If such information has been compiled, in whole or in part, in any analysis of T-1 nonimmigrant status applications, then I would like to obtain such analysis." *Id*.; Ex. F.

That same day, on September 23, 2020, USCIS FOIA staff reached out to Dahlstrom to schedule a call, which occurred on September 28, 2020. *Id*. ¶ 25.  On October 2, 2020, Dahlstrom

emailed the USCIS FOIA Office and modified her FOIA request to seek *thirteen* discrete categories of records pertaining to statistical analysis for T-1 visa applications. *See id.*; *see also* Munita Decl. Ex. F.

USCIS FOIA staff emailed Dahlstrom on October 2, 2020, regarding the modification of the August 21 request, explaining that a new acknowledgement letter had been sent to her digital account and informing her that her case would retain its original received date of August 21, 2020, and the original number in line of 1,330 out of 1,472 pending requests. *Id.* ¶ 26. She was also informed that the modified request would be responded to on a first-in, first-out basis on a multi-track system, that her request had been placed in the complex track, and that USCIS was invoking a 10-day extension pursuant to 5 U.S.C. 552 § (a)(6)(B). *Id.*, *see also* Munita Decl. Ex. G.

Dahlstrom's request was assigned to the appropriate USCIS offices to conduct a search. Munita Decl. ¶ 27. The NRC FOIA Office was provided approximately ninety pages of potentially responsive records, along with an Excel spreadsheet. *Id.*

On December 30, 2020, Dahlstrom inquired regarding the status of both August 2020 requests to which FOIA staff responded on January 4, 2021, explaining that the August 7 request "has records received and is currently number 1,292 of 1,450 pending requests" and that the August 21 request 'has records received and is currently number 1278 of 1450 pending requests." *See* Munita Decl. ¶ 28; Ex. F.

On May 19, 2021, Dahlstrom inquired again regarding her requests. FOIA staff responded the same day explaining that the August 21 request "has records received and is currently 1146 of 1487 pending requests," and that the January 2022 request "has records received and is currently number 1135 of 1487 pending requests." Munita Decl. ¶ 29. In accordance with the NRC FOIA

office's first-in, first-out process, Dahlstrom's FOIA requests had moved up in line more than 140 requests over the first four-to-five months of 2021.  *Id.* ¶ 30.

### C.    The January 2022 Request

On January 27, 2022, USCIS's FOIA Office received a FOIA request dated January 21, 2022 submitted by Dahlstrom and Heba Gowayed ("Plaintiffs").  Munita Decl. ¶ 31; Ex. H. The 2022 request sought seven categories of documents, including all denials, requests for evidence, notices of intent to deny, notices to appear, rejection notices and notices of intent to revoke for applications for T-1 visas between January 1, 2017 through December 1, 2021, as well as "[a]ny statistical analysis of applications for T-1 nonimmigrant status completed from January 1, 2014 through December 31, 2016, including statistical analyses of rejections, Requests for Evidence or Notices of intent to Deny ("NOIDs") of applications for T-1 nonimmigrant status or statistical analyses of the time between submission and the issuance of a decision on an application for T-1 nonimmigrant status." Munita Decl. ¶¶ 31-32.

Within ten business days of receipt, in a letter dated February 2, 2022, Plaintiffs were informed that their FOIA request was assigned FOIA control number COW2022000513 and that the request would be responded to on a first-in, first-out basis and on a multi-track system.  Munita Decl. ¶ 33; Ex. I.  Plaintiffs were also informed that their request had been placed in the complex track, USCIS was invoking a 10-day extension pursuant to 5 U.S.C. 552 § (a)(6)(B), and that their request for expedited processing was determined to be not warranted.  *Id.*

On March 18, 2022, Dahlstrom sent an email to the NRC explaining that "[t]his email is in response to . . . FOIA Request (No. COW2022000513)" explaining that "[o]n January 27, 2022, USCIS received our expedited FOIA request.  On February 16, 2022, in response to correspondence received by USCIS, we refiled the request with the USCIS Senior Director of

FOIA Operations.  Since then, we have not received any further correspondence from USCIS."
Munita Decl. ¶ 34; Ex. J. Dahlstrom further indicated that she "registered the initial FOIA request
(No. COW2022000513) with the USCIS portal, but no correspondence has been posted to date.
We also have received no correspondence regarding the refiled request.  I am writing to request
that any acknowledgement letters and/or other correspondence issued by USCIS in this request be
posted to the portal and to inquire about the status of this request."  *Id*. ¶ 35.

USCIS responded to Dahlstrom's email the same day, on March 18, 2022, providing a copy
of the February 2, 2022, acknowledgement letter and informing Dahlstrom that her request is
currently number 1,285 of 1,629 pending requests.  *Id*. ¶ 36.

In a March 18, 2022, letter, Plaintiffs' attorney informed USCIS that another letter dated
February 16, 2022, had been submitted via certified mail and sought the precise date USCIS
received his "clients' refiling of February 16, 2022."  *Id*. ¶ 37. Plaintiffs' attorney included another
letter dated February 16, 2022, seeking expedited processing for the same information sought
under the 2022 request and agreeing to "accept responsive records in a digital format" under the
2022 request.  *Id*.

On March 25, 2022, FOIA staff emailed Dahlstrom noting that USCIS had received the
March 18, 2022 and February 16, 2022 letters and that after reviewing the letter and FIRST, it
appeared Dahlstrom had three open FOIA requests (August 7 and August 21, 2020, and January
2022) seeking similar information.  Munita Decl. ¶ 38; Ex. K.  The FOIA processor requested a
time to discuss the requests and the possibility of combining the requests into a single response
and informed Dahlstrom that immediately following the discussion, USCIS would evaluate the
refiled request for expedited treatment.  *Id*.

On March 30, 2022, FOIA staff participated in a telephone call with Dahlstrom regarding the January 2022 request. Munita Decl. ¶ 39. Later that day, FOIA staff emailed Dahlstrom seeking clarification of the January 2022 request based on clarification that Dahlstrom has previously provided in response to the August 21, 2020 request, which used the exact same wording as the 2022 FOIA request, except for the date range. *Id*. The FOIA staff also sought clarification regarding the date range applicable to item (g) of the January 21, 2022 request (COW20220000513). *Id*.

Plaintiff responded the following day, stating that she was disappointed that she had not yet received a "response to our request for expedited processing (control number COW2022000513)" and requested a "response to our request for expedited treatment by Monday, April 4." *Id*. ¶ 40. In that same email, Dahlstrom also informed the FOIA processor that "we are amenable to requesting the statistical data for items (a)-(f) in place of the actual documents, if it will allow the agency to respond more expeditiously to the expedite request. Also, to confirm, we are requesting data on T-1 applications from January 1, 2014, through December 31, 2016, in item (g). It is true that this is distinct from the items requested in the 2020 requests." Munita Decl. ¶ 40; Ex. J.

On April 1, 2022, the very next day following Dahlstrom's clarification of the 2022 request, the FOIA processor emailed Dahlstrom, at 6:53 a.m., informing her that USCIS had granted her request for expedited treatment for the 2022 request and attached a copy of the letter granting expedited processing for the January 2022 request under 5 U.S.C. § 552(a)(6)(E)(v)(I) & (II). Munita Decl. ¶ 41; Ex. L.

In that same email, the FOIA processor made another proposal for the data requested in all three requests, noting that the office had "already received data reports conducted based on the

parameters of [the August 7, 2020 request] and the modified parameters of [the August 21, 2020 request] for the period of January 1, 2017 through July 1, 2020" and suggesting that instead of receiving the same reports multiple times, would Plaintiffs "be amendable [sic] to withdrawing the data portions of [the 2020 requests] and accept only a single response for all the data under [the January 2022 request]?"  Munita Decl. ¶ 42.   If so, the FOIA processor explained that "we still intend to request a new search for the time periods of January 1, 2014 through December 31, 2016 and July 1, 2020 through December 1, 2021 and include these new reports under [the January 2022 request]."  *Id*.

Dahlstrom responded later that day inquiring as to when she would receive production and agreeing to "'withdraw[] the data portions of [the 2020 requests] and accept only a single response for all the data under [the 2022 request]" and further clarifying "I do want to receive a new search for the time periods of January 1, 2014 through December 31, 2016, and July 1, 2020 through December 1, 2021.  I am happy to receive the new reports under [the 2022 request]."  *Id*. ¶ 43.

On April 4, 2022, the FOIA staff member assigned the FOIA request to the USCIS Office of Performance and Quality for a supplemental search for records responsive to the 2022 request, as modified.  Munita Decl. ¶ 44.  In the staffing assignment, the FOIA staff member explained that the request had been granted expedited treatment under the FOIA and to please provide records as soon as possible. *Id*.  FIRST set the due date for responsive records to be provided on April 11, 2022—five business days later.  *Id*.

Potentially responsive records were initially provided in response to the staffing on April 4, 2022, but rejected that same day by the FOIA staff member as insufficient because the records provided did not contain all the requested data points.  Munita Decl. ¶ 45. The FOIA staff member re-assigned the request to search for responsive records that same day.  *Id.*

On April 11, 2022, a reminder notification email was sent automatically from FIRST to OPQ reminding that the responses to its search were due. Munita Decl. ¶ 46. Two days later, on April 13, 2022, potentially responsive records were uploaded into FIRST for processing. *Id*. At that time, the 2022 request was then pending processing among six other requests granted expedited processing by the NRC FOIA SIG team. Munita Decl. ¶ 47.

Twelve business days later, on April 29, 2022, Plaintiffs filed the instant action and the 2022 request was reassigned to a SIG litigation processor.  Munita Decl. ¶ 48.  Upon reviewing the potentially responsive records provided in response to Plaintiffs' request for statistical information regarding nonimmigrant T-Visa applications involving victims of trafficking as part of this litigation, the processor determined that in accordance with 8 U.S.C. § 1367, a new search would be required to ensure information sought by Plaintiffs and subject to 8 U.S.C. § 1367 is disclosed in a tabulation or statistical format that does not disclose the information reported by, or on behalf of, any particular respondent in accordance with that statute. Munita Decl. ¶ 48, n.2; *see also* 8 U.S.C. § 1367 (addressing penalties for improper disclosure of information to include certain types of information that relates to those who are a beneficiary of an application for relief under section 101(a)(15)(T) under the Immigration and Nationality Act).

As of the date of this filing, the litigation processor has already requested a new search for aggregate, statistical information in response to the 2022 request, as well as to the August 7, 2020 request, sections (a)-(f), and the modified version of the August 21, 2020 request, sections (a)-(l), which Plaintiffs agreed to withdraw from Dahlstrom's original requests, and instead receive under the 2022 request. Munita Decl. ¶ 49.  This new search is already underway and is receiving priority treatment.  *Id*. ¶ 50.

USCIS anticipates that the renewed search for records responsive to the 2022 request, as modified, will be completed by mid-June 2022. Munita Decl. ¶ 50. The time frame necessary to complete processing of the expedited records will depend on the nature and size of the potentially responsive records provided, but USCIS expects that it will be able to process the records, complete the review and approval process, and produce records subject to proper redactions under FOIA as soon as practicable, possibly by early July. *Id.*[4]

## STANDARD OF REVIEW

Preliminary injunctive relief "is 'an extraordinary remedy never awarded as of right.'" *Friends of Animals v. U.S. Bureau of Land Mgmt.*, Civ. A. No. 17-0136, 2017 WL 499882, *3 (D.D.C. Feb. 7, 2017) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24, (2008)); *see Munaf v. Green*, 553 U.S. 674, 689 (2008) ("A preliminary injunction is an extraordinary and drastic remedy") (citation omitted)). It "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

A party moving for a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction is not granted; (3) that an injunction would not substantially injure other interested (nonmoving) parties; and (4) that the public interest would be furthered by the injunction. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995); *see also, e.g., Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842–43 (D.C. Cir. 1977); *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958). The final two "factors merge when the

---

[4]    As to the remainder of the 2020 requests, USCIS has identified approximately 9,000 potentially responsive pages. Munita Decl. ¶ 51. Plaintiffs' FOIA requests are currently 652 and 659 out of 1,659 pending requests, respectively. *Id.*

Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Although the D.C. Circuit has not yet definitively decided whether *Winter* abrogates the "sliding scale" approach for assessing these four factors previously applied in this Circuit, "[s]everal judges" on the Circuit have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *See Allied Progress v. Consumer Fin. Prot. Bureau*, Civ. A. No. 17-0686 (CKK), 2017 WL 1750263, at *2 (D.D.C. May 4, 2017) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011)). This Circuit has also emphasized that a showing of irreparable harm is an "independent prerequisite" for a preliminary injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

## ARGUMENT

## I.    Preliminary Injunctions are Generally Inappropriate in FOIA Cases

Even before considering the traditional four-factor test, the Court would be well within its discretion to deny Plaintiffs' motion on the ground that preliminary injunctive relief is generally inappropriate in the context of a FOIA action.

The traditional purpose of a preliminary injunction is to "preserve the status quo" so that the court can issue a meaningful decision on the merits. *Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006) (citation omitted). FOIA injunctions, of the kind Plaintiffs seek here, depart from this purpose. Requiring agencies to produce documents within a specified period of time, as Plaintiffs' request, "alter[s], rather than preserve[s], the status quo by commanding [a] positive act." *Elec. Info. Privacy Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (citations omitted). Such mandatory injunctions are disfavored as a general matter—and should not be issued except in truly extraordinary circumstances, which FOIA requests rarely if ever pose. *See, e.g., id.* (mandatory injunctions require "the moving party [to] meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage

will result from the denial of the injunction") (citations omitted*); see also Nat'l Conf. on Ministry to the Armed Forces v. James*, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) ("A district court should not issue a mandatory preliminary injunction unless the facts and law clearly favor the moving party." (quotation omitted)).

Separately, binding precedent dictates that a preliminary injunction should not be a way for a plaintiff to short circuit the litigation process, and obtain the full relief it seeks on the merits. *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) ("a preliminary injunction should not work to give a party essentially the full relief he seeks on the merits.") (per curiam); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits."). Yet in a FOIA case such as this one, an order directing an agency to produce records by a date certain is the ultimate relief plaintiffs seek. *Compare* Pls.' Mot. *with* Compl. at 8. Granting ultimate relief in the guise of a preliminary injunction is improper. *See, e.g., Daily Caller*, 152 F. Supp. 3d at 6–7.

Finally, FOIA establishes its own specialized procedural framework controlling the processing of FOIA requests and procedures for FOIA litigation. *See, e.g.*, 5 U.S.C. § 552(a)(3)(A) (providing that a FOIA request must reasonably describe the records sought and must be filed in accordance with published rules and procedures); *id*. § 552(a)(6)(E)(iii) (requiring FOIA requests granted expedited processing to be processed as soon as practicable); *id*. § 552(a)(4)(C) (requiring responsive filing within thirty days of service of a complaint). Sidestepping this statutory framework through emergency relief undermines Congressional intent and serves to disadvantage other requestors and litigants whose requests must then give way to the plaintiffs' interests. Plaintiffs should not be permitted to use the "extraordinary and drastic remedy" of an injunction, *Munaf*, 553 U.S. at 689, as a means of jumping ahead of other requests or consuming FOIA

resources thereby disadvantaging other FOIA requesters (including those whose FOIA requests had also been granted expedited processing, or are subject to court-ordered production). Not only is this procedure unfair to other FOIA requesters, but also results in burdensome and unnecessary motion practice for the parties and the Court.

For all these reasons, Courts in this district routinely deny requests for preliminary injunctions in FOIA cases. *See, e.g., Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006) (given the "broad scope of plaintiff's requests," denying motion for preliminary injunction to compel processing within twenty days, and explaining that "[t]he government has not yet had a chance to review its files, prepare and file a dispositive motion, and provide the Court the information necessary to make a decision on any material that might be subject to an exemption"); *Allied Progress*, 2017 WL 1750263, at *1 (denying request for a preliminary injunction mandating expedited processing and production where requester failed to show a likelihood of success on the merits and irreparable harm); *Elec. Privacy Info. Ctr. v. Dep't of Just.*, Civ. A. No. 03-2078 (D.D.C. Oct. 20, 2003), ECF No. 4, slip op. at 1 (denying, sua sponte, a request "'enjoining defendant [Department of Justice] from continuing to deny plaintiff expedited processing of plaintiff's Freedom of Information Act request'" because such relief "would effectively grant all the relief plaintiff seeks"), *vacated as moot*, 2004 WL 2713119 (D.C. Cir. 2004).[5]

---

[5]    *See also, e.g., Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 124 (D.D.C. 2013) (denying request for a preliminary injunction to expedite processing where requester failed to meet all four elements); *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 279 (D.D.C. 2012) (denying request for a preliminary injunction to expedite processing where agency stated request is already at the top of the queue and requester failed to meet other elements); *Al-Fayed v. CIA*, Civ. A. No. 00-20292, 2000 WL 34342564, *6 (D.D.C. Sept. 20, 2000) (finding that "upon consideration of the parties' arguments, the statutory and regulatory context, and the applicable case law," emergency relief was not warranted despite the agency's delay in responding to FOIA requests), *aff'd*, 254 F.3d 300 (D.C. Cir. 2001); *Jud. Watch, Inc. v. Dep't of Just.*, No. 00-1396 (D.D.C., June

It bears noting that Plaintiffs rely heavily on this Court's grant of a preliminary injunction in *American Immigration Council ("AIC") v. Department of Homeland Security*, 470 F. Supp. 3d 32 (D.D.C. 2020), a FOIA case brought at the beginning of the COVID-19 pandemic seeking records relating to the government's ongoing response to the public health emergency. Pls.' Mot. at 20-21. Plaintiffs' reliance on *AIC* is misguided. *AIC* is distinguishable from this case because there, the plaintiff (a nonprofit organization) sought records relating to U.S. Immigration and Customs Enforcement's ("ICE") protocols and medical guidance, as well as treatment for individuals detained in ICE custody who had tested positive for COVID-19. *Id*. at 34. Critically, the requester in *AIC* submitted its request to ICE on March 19, 2020, the first week that the United States went into lockdown because of the COVID-19 pandemic and ensuing public health emergency. Similarly, the requester sought production of all responsive records within 30 days of the court's order. *Id*. The Court granted the *AIC* plaintiff's request for an injunction, noting that DHS "failed to provide even an estimated timeline for processing and production," rendering plaintiff likely to succeed on the merits. 470 F. Supp. 3d at 37. The *AIC* Court also noted that

27, 2000), ECF No. 4, slip op. at 1 (denying plaintiff's "emergency motion for expedited treatment" to "compel defendant to respond to plaintiff's Freedom of Information Act request" and noting that the FOIA "was not designed and does not operate as a vehicle to provide immediate and continuing access to government records through litigation"). Courts in other districts do so as well. *See, e.g., Aronson v. Dep't of Hous. & Urban Dev.*, 869 F.2d 646, 648 (1st Cir. 1989) (Breyer, J.) (denying preliminary injunction); *Pinnacle Armor, Inc. v. United States*, Civ. A. No. 07-1655, 2008 WL 108969, at *9 (E.D. Cal. Jan. 7, 2008) (denying injunctive relief and noting that "[p]laintiff has not provided any authority for the proposition that the claim for the Freedom of Information Act supports a claim for an injunction"); *Carlson v. U.S. Postal Serv.*, No. 02-5471, 2005 WL 756573, at *8 (N.D. Cal. Mar. 31, 2005) (denying request for injunction sought to compel "timely" response to FOIA request); *Beta Steel Corp. v. NLRB*, No. 2:97 CV 358, 1997 WL 836525, at *2 (N.D. Ind. Oct. 22, 1997) (denying preliminary injunction); *cf. Wiedenhoeft v. United States*, 189 F. Supp. 2d 295, 29697 (D. Md. 2002) (refusing to issue temporary restraining order to force "immediate compliance" with plaintiff's FOIA requests by moving them "to the head of the queue forthwith").

COVID-19 was continuing and because the public health emergency was "ongoing," plaintiff's claims of irreparable harm were "bolstered." *Id*. at 38.

In contrast to this case, and as discussed further below, Plaintiffs cannot demonstrate that USCIS has failed to process their request, or that their multiple requests for data and statistical analysis of USCIS's adjudication of T-1 visas for dates ranging from 2014 through 2021 are a matter of national urgency (or even emergency). First, unlike *AIC*, in this case USCIS has noted that it is prioritizing and expediting Plaintiffs' 2022 request, and provided an anticipated date for production, to occur by early July. Munita Decl. ¶ 50. Therefore, unlike *AIC*, Plaintiffs here are unable to demonstrate a likelihood of success on the merits.

Second, in *AIC*, the plaintiff was able to demonstrate a critical need in receiving the information immediately, so that it could in turn inform the public regarding the rights of individuals detained in ICE custody and ICE's response to the ongoing public health emergency as it was occurring. *Id*. at 35. This Court also found that the *AIC* plaintiff's request could "likely influence public discourse around ICE's handling" of the global pandemic. *Id*. at 37. [6] Conversely, Plaintiffs here are unable to demonstrate that the records they seek are needed for *immediate* disclosure to the public or that the publication of information gleaned from any responsive records will impact immigration policy. *See* Pls.' Mot. at 25-26. Moreover, as Plaintiffs' request for an

---

[6]    Plaintiffs' papers parrot the language of the Court's order in AIC, *compare* Pls.' Mot. at 24 ("Plaintiffs seek records that will help guide on-the-ground efforts that will directly impact applicants of T-1 Visas and that will likely influence public policy around USCIS's handling of the T-1 Visa program"), *with* 470 F. Supp. 2d at 37 (finding that plaintiff's request will "help guide on-the-ground efforts that will directly impact detained immigrants" and "likely influence public discourse around ICE's handling of the global pandemic") but Plaintiffs' unsupported and sweeping statements, without a demonstrated plan or deadline to report on the adjudication of the T-1 visas for victims of human trafficking, renders Plaintiffs' arguments hollow. Simply mirroring the language of this Court's rationalization in *AIC* is insufficient to meet Plaintiffs' high burden, and Plaintiffs' fail to demonstrate that the records they seek relate to a time-sensitive matter such as the request at issue in *AIC*.

injunction is limited solely to the 2022 request, to the extent Plaintiffs seek records responsive to all pending FOIA requests, Plaintiffs have also failed to demonstrate that they will be irreparably harmed if USCIS fails to produce what remains of the 2020 requests (approximately 9,000 pages of potentially responsive records). While Defendant recognizes that this Court has previously granted injunctions in the FOIA context, it has done so in limited fashion and in circumstances not applicable to the instant case. Accordingly, this Court should give limited weight to the *AIC* decision.

## II.    Plaintiffs' Fail to Meet Their Heavy Burden to Show Entitlement to Emergency, Mandatory Relief

Putting aside all the general reasons to deny preliminary injunctive relief in a FOIA case, Plaintiffs have failed to carry their heavy burden of showing entitlement to such an extraordinary remedy. *See Elec. Info. Privacy Ctr.*, 15 F. Supp. 3d at 39 (mandatory injunctions require "the moving party [to] meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction") (citations omitted).  Plaintiffs fail to show a likelihood of success on the merits because the 2022 request is already receiving priority treatment and they cannot demonstrate why they are entitled to a Court order requiring USCIS to produce all responsive, non-exempt records in thirty days.  Likewise, Plaintiffs cannot show that they would suffer actual, irreparable harm if their FOIA requests are not completely processed by then.  Meanwhile, the balance of harms and public interest favor the fair result of maintaining the status quo.

### A.    Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits

Before a court may enter a preliminary injunction, "[i]t is particularly important for the movant to demonstrate a substantial likelihood of success on the merits," because "absent a substantial indication of likely success on the merits, there would be no justification for the

[C]ourt's intrusion into the ordinary processes of administration and judicial review." *Hubbard v. United States*, 496 F. Supp. 2d 194, 198 (D.D.C. 2007) (internal quotation marks and citation omitted). To make this kind of showing here, Plaintiffs must establish that they are entitled to the records within the timeframe it wishes. *Protect Democracy Project, Inc. v. Dep't of Def.*, 263 F. Supp. 3d 293, 301–02 (D.D.C. 2017). Plaintiffs fail to clear this high bar.

FOIA does not dictate a specific, compressed schedule for processing requests, even when those requests are expedited. Rather, the statute allows for constructive exhaustion when the twenty or, in the case of unusual circumstances, thirty-day response time is not adhered to, 5 U.S.C. § 552(a)(4)(B), and directs an agency merely to "process as soon as practicable any request for records to which the agency has granted expedited processing," 5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added).

Constructive exhaustion of administrative remedies is far short of an entitlement to immediate processing and production. A requester who files suit after the expiration of the twenty-day timeline is not entitled to "the imposition of another explicit timeline" for the production of records, but instead can file suit to have the Court "supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." *Protect Democracy Project*, 263 F. Supp. 3d at 302 (quoting *CREW v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013); *see also Daily Caller*, 152 F. Supp. 3d at 10-11 ("Standing alone, [the agency's failure to issue a determination within 20 days] does not conclusively demonstrate that the plaintiff is likely to prevail in its underlying effort to accelerate the processing of its FOIA requests and the ultimate production of any responsive, non-exempt records."); *Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d at 40 ("[N]othing in the FOIA statute establishes that an agency's failure to

comply with this 20-day deadline automatically results in the agency's having to produce the requested documents without continued processing, as EPIC suggests.").

There is likewise no set timeframe within which records must be produced even when expedited processing is granted.  A Senate Judiciary Committee report explained the expedited processing provisions as follows:

> Once . . . the request for expedited access is granted, the agency must then proceed to process that request "as soon as practicable." No specific number of days for compliance is imposed by the bill since, depending upon the complexity of the request, the time needed for compliance may vary. The goal is not to get the request for expedited access processed within a specific time frame, but to give the request priority for processing more quickly than otherwise would occur.

Electronic Freedom of Information Improvement Act of 1995, S. Rep. No. 104-272, at 17 (1996), available at 1996 WL 262861. Accordingly, this Court has recognized that when expedited treatment is warranted, the statute requires only that "requests must be 'process[ed] as soon as practicable.'" *Protect Democracy Project*, 263 F. Supp. 3d at 296 (quoting 5 U.S.C. § 552(a)(6)(E)(iii)).

Contrary to what Plaintiffs suggest, there can be no automatic presumption that the two month-long delay in responding to the 2022 request (which was granted expedited processing on March 31, 2022) runs afoul of FOIA.  Pls.' Mot. at 22-23. While USCIS expects to produce the records subject to the 2022 request by early July or earlier, processing the remaining approximately 9,000 pages of records for which expedited processing has not been granted would require substantially more time, and as noted elsewhere, Plaintiffs have shown no immediate entitlement to those records, and their motion makes no mention of those records.

Here, USCIS's declaration establishes that it would not be practicable to produce all responsive, non-exempt records in 30 days, as Plaintiffs are requesting.  Munita Decl. ¶¶ 50-52. As noted above, USCIS has conducted searches for records responsive to Plaintiffs' 2022 request,

but work remains to be done to review potentially responsive records for responsiveness, as well as to ensure that the production of records comports with the disclosure limitations of 8 U.S.C. § 1367. Munita Decl. ¶¶ 48-50.[7]  Importantly, USCIS must also complete this work alongside their other FOIA obligations, including court-ordered productions for other cases in litigation. As mentioned previously, there are twelve processors assigned to the significant interest group, many of which involve a high volume of potentially responsive pages, and five of which are assigned to matters in litigation, such as Plaintiffs'. Munita Decl. ¶ 52.

Defendant is processing Plaintiffs' FOIA requests in accordance with FOIA and DHS regulations, this Court's supervision of that process is now available, and Plaintiffs have not shown a likelihood of success on the merits of any legal claim that would entitle them to relief—let alone immediate, mandatory relief—on the basis of Defendant not processing the requests within twenty days or immediately. Plaintiffs' demand for an immediate fixed date to complete processing of the result has no basis in law.

### B.    Plaintiffs Have Failed to Establish that They Will Suffer Irreparable Harm

Plaintiffs fare no better in their efforts to establish that it is likely to suffer the kind of irreparable harm that could sustain a mandatory injunction. The D.C. Circuit "has set a high standard for irreparable injury." *In re Navy Chaplaincy*, 534 F.3d 756, 766 (D.C. Cir. 2008) (internal quotation marks and citation omitted). The party seeking injunctive relief must show that its injury is "both certain and great," and that it is "actual and not theoretical." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).  It is a "well known and indisputable principle[]" that an "unsubstantiated and speculative" harm cannot constitute "irreparable harm"

---

[7]    The remainder of the 2020 requests, consisting of approximately 9,000 pages of potentially responsive pages, has not been granted expedited treatment and has been pending processing in accordance with DHS regulations on a first-in, first-out basis. *See* 6 C.F.R. § 5.5(a); Munita Decl. ¶¶ 18, 26, 28-30, 51.

sufficient to justify injunctive relief. *Id*. In short, "[t]he key word in this consideration is irreparable. . . .[t]he possibility that adequate. . . corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Id*. (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

Consistent with this standard, Courts have granted preliminary injunctions in FOIA cases only when a plaintiff would be irreparably harmed by an actual, impending deadline. *See, e.g., Am. Oversight v. Dep't of State*, 414 F. Supp. 3d 182, 186 (D.D.C. 2019) ("Time is clearly of the essence here . . . congressional leaders expect [the impeachment inquiry] to conclude by Christmas. American Oversight filed its requests with State over five months ago."); *Ctr. for Pub. Integrity v. Dep't of Def.,* 411 F. Supp. 3d 5, 12 (D.D.C. 2019) ("[T]he value and import of the information requested by Plaintiff is directly tied to the current, ongoing impeachment proceedings."); *Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 75 (D.D.C. 2006) ("Because the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election [(which was only three weeks away)], a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment."); *Aguilera v. FBI*, 941 F. Supp. 144, 151-52 (D.D.C. 1996) (finding, in a case where the documents at issue were key evidence in an evidentiary hearing scheduled for the near future regarding the requester's conviction for murder, that a preliminary injunction requiring the FBI to expedite the processing of plaintiff's FOIA request was warranted). By contrast, this Court has found no irreparable injury where plaintiffs had "not identified a single imminent deadline related to its request, or any event set to occur on a particular date." *Protect Democracy Project*, 263 F. Supp. 3d at 302 (internal quotes omitted).

Importantly, Plaintiffs cannot point to any concrete deadline by which they need the records, and critically fail to note that aside from seeking records for research for publication, do not identify a publication date or even a proposed deadline for publication. The most fatal blow to Plaintiffs' motion, however, and which severely undermines Plaintiffs' arguments that they will suffer irreparable harm, is the undisputed fact that Plaintiffs waited approximately two years after submitting their first requests to bring this motion. There is no question that the 2022 request overlaps with Plaintiffs' prior 2020 requests, and if the need for these records was so urgent or so critical, Plaintiffs should have sought this relief sooner.  That Plaintiffs chose to wait weakens their claims of irreparable harm.

Further, Plaintiffs merely allege that the information they seek "will guide on-the-ground efforts that will directly impact applicants of T-1 Visas and that will likely influence public policy around USCIS's handling of the T-1 Visa program" and claims that Plaintiffs plan on "counteracting the negative effects" of misinformation by "publishing their research." Pls. Mot. at 24. As previously noted, this language appears solely to mirror the language from the Court's decision in *AIC*.  Notably, Plaintiffs fail to point Defendant or the Court to any concrete plans as to how to disseminate this information, instead citing to an AILA Journal article and a U.S. Department of State "Trafficking in Persons" Report from 2021, which notes the importance of publishing accurate data to combat human trafficking. Pls.' Mot. at 11-17.[8]  While USCIS does not dispute that Plaintiffs seek the underlying records to report on important issues relating to immigrant rights, Plaintiffs cannot demonstrate a compelling need such that USCIS should be required to consume all available FOIA resources to produce all responsive records within thirty

---

[8]      Plaintiffs also cite to a few Congressional inquiries, but they all occurred in 2019, before Plaintiffs even submitted their FOIA requests to USCIS.  Pls.' Mot. at 14-15.

days, thereby disadvantaging other FOIA requesters and sidestep Congressionally mandated timetables and processes.

The Court need only examine Plaintiffs' own words to see that Plaintiffs fall far short of meeting their high burden. Plaintiffs couch their intent in vague and unsupported terms, stating that they "intend to widely disseminate the records obtained in the FOIA request to influence public action and contribute to remedying the ongoing immigration crisis in this country," Pls.' Mot. at 26, but do not identify with specificity how or when they plan on doing so, or what vehicles they will employ to accomplish that mission. As a legal matter, Plaintiffs' substantiation is insufficient. *See generally Protect Democracy Project*, 263 F. Supp. at 302; *see also Daily Caller*, 152 F. Supp. 3d at 13; *see also Elec. Privacy Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 46–47 (D.D.C. 2014) (stating that it is "clear from case law that a movant's general interest in being able to engage in an ongoing public debate using information that it has requested under FOIA is not sufficient to establish that irreparable harm will occur unless the movant receives immediate access to that information").

As Plaintiffs note, the underlying policy on which they plan to report was a policy acted on by the previous administration, and concede that the current administration has "removed the unlawful policy." Pls.' Mot. at 25. Thus, Plaintiffs inherently recognize that the information they seek to report on is not of the essence, or of critical importance to current events entitling them to the extraordinary remedy of an injunction. Importantly, the 2020 requests seek information from 2017 through 2020, while the 2022 expedited request seeks records from 2017 to 2021, and all three FOIA requests unmistakably seek records for events occurring years ago, during a different administration with dissimilar immigration policies. Indeed, this case is not like other cases where the court has granted an injunction for records upon a showing of an immediate, pressing need. If

28

the Court were to recognize the injury Plaintiffs suffer in having to wait for the records as irreparable, nearly every FOIA litigant could make the same showing. That would transform the "extraordinary and drastic remedy" of a preliminary injunction, *Munaf*, 553 U.S. at 689, into a mundane tool of FOIA case management. Doing so would be improper.

Much of Plaintiffs' alleged harm was addressed by USCIS's decision to grant Plaintiffs' request for expedited processing, which placed Plaintiffs' 2022 request in an accelerated queue along with others deemed similarly important. Now that the matter is in litigation, USCIS intends on completing the renewed search for records responsive to the 2022 request, as modified, by mid-June 2022, or earlier. Munita Decl. ¶ 50. USCIS expects that it will be able to process the records, complete the review and approval process and produce records properly redacted pursuant to FOIA by early July 2022. *Id*. Plaintiffs can point to no concrete event that necessitates production earlier.

In sum, Plaintiffs have failed to meet their heavy burden of showing of irreparable harm, and for this reason alone its motion for emergency injunctive relief should be denied.

### C. The Balance of Equities and the Public Interest Weigh Against a Preliminary Injunction

Along with alleged harm to Plaintiffs, the Court must consider whether a preliminary injunction of the sort demanded by Plaintiffs would be in the public interest or harm nonlitigants. *See Al-Fayed,* 254 F.3d at 303. Here, those criteria likewise weigh against a preliminary injunction.

First, granting an injunction would disadvantage other, similarly situated organizations or members of the public who have FOIA requests pending before USCIS (some of which also may be viewed as urgent by the requestors) that have been granted expedited processing or are in litigation. *See Baker v. Consumer Fin. Prot. Bureau*, Civ. A. No. 18-2403 (CKK), 2018 WL 5723146, at *5 (D.D.C. Nov. 1, 2018) (finding that a "preliminary injunction ordering the immediate processing and release of the requested records" "would harm the approximately 100

other requesters . . . in line ahead of Plaintiff and would erode the proper functioning of the FOIA system"). Plaintiffs discount this harm in their papers, Pls.' Mot. at 26-27, but it is quite real. USCIS's resources are limited. *See generally* Munita Decl. Ordering USCIS to complete Plaintiffs' requests on an artificial timeline would require that resources be diverted from other requests, thus harming other requestors' interests as well as the overall public interest in proper operation of the FOIA, including its provision for expedition.

Further, Plaintiffs erroneously argue that USCIS's grant of their request for expedited processing, "moved Plaintiffs' request to the front of the processing queue." Pls.' Mot. at 27. Not so. USCIS's grant of expedited processing moved Plaintiffs into a queue of requests in which expedited processing had been granted, to be processed "as soon as practicable," guaranteeing that they would receive the requested records sooner. Granting expedited processing did not guarantee that Plaintiffs would have their request addressed before any other FOIA request. Plaintiffs can point to nothing in the statutory language of FOIA that requires USCIS to process Plaintiffs' requests ahead of *all others* – regardless of whether Plaintiffs were granted expedited processing or not. It is well understood that there are other requesters aside from Plaintiffs who have similarly been granted expedited processing upon a showing of compelling need, and who were granted expedited processing prior to Plaintiffs.

Indeed, Courts have consistently recognized that disruption to the normal processing schedules constitutes real harm to the public interest, and is inconsistent with FOIA's scheme. *See The Nation Magazine v. Dep't of State*, 805 F. Supp. 68, 74 (D.D.C. 1998) (entry of a preliminary injunction expediting a FOIA request over other pending requests "would severely jeopardize the public's interest in an orderly, fair, and efficient administration of [ ] FOIA"); *Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d at 47 ("[A]llowing [a plaintiff] to jump to the head of the line would upset

the agency's processes and be detrimental to the other expedited requesters, some of whom may have even more pressing needs."); *Protect Democracy Project*, 263 F. Supp. 3d at 303 ("[R]equiring production by a date certain, without any factual basis for doing so, might actually disrupt FOIA's expedited processing regime rather than implement it."). All of Plaintiffs' claims that its request would serve FOIA's underlying purpose, Pls. Mem. at 27-28, are therefore unavailing.

Further, granting Plaintiffs' request for a burdensome and extraordinary processing schedule would compromise the public interest in ensuring that certain types of documents, the disclosure of which would cause harm, are carefully redacted consistent with the FOIA exemptions. The exemptions listed in Section 552(b) embody a judgment by Congress that the public interest would best be served by allowing agencies to withhold certain records—for example, classified information and those records whose disclosure would interfere with effective law enforcement, 5 U.S.C. §§ 552(b)(1), (7). Indeed, Congress specifically recognized that, in certain cases, depending on the subject matter of the request, additional time would be required to ensure that the public's interest in preventing the public disclosure of these exempted documents was not compromised. *See* H.R. Rep. No. 104-795, 1996 U.S.C.C.A.N. at 3466 ("In underscoring the requirement that agencies respond to requests in a timely manner, the Committee does not intend to weaken the interests protected by the FOIA exemptions. Agencies processing some requests may need additional time to adequately review requested material to protect these exemption interests.").

Ordering USCIS to disclose records subject to expedited processing, not "as soon as practicable" as dictated by FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), but rather on Plaintiffs' determined timetable, threatens to risk disclosure of statutorily exempt material. *See Daily Caller*, 152 F.

Supp. 3d at 14 ("Requiring the agency to process and produce [requested] materials under an abbreviated deadline raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA."); *Protect Democracy Project*, 263 F. Supp. 3d at 302 ("Imposing on Defendants an arbitrary deadline for processing would run the risk of overburdening them, and could even lead to the mistaken release of protected information."); *Baker*, 2018 WL 5723146, at *5 ("Ordering Defendant to process and release documents according to Plaintiff's timeline risks that, in its haste, Defendant will inadvertently release records which fall under a FOIA exception and Congress has decided should not be released.").   USCIS has already made clear that it is prioritizing the 2022 request.  For these reasons, the public interest weighs in favor of applying the normal processing schedule to Plaintiffs' requests.

Given the weight of the public interest—and Plaintiffs' failure to establish either irreparable injury or a likelihood of success on the merits—granting Plaintiffs' request for a preliminary injunction would be inappropriate. The Court should deny that request, and not compromise the delicate balancing of interests that Congress undertook in enacting FOIA.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

\*    \*    \*

32

Dated: June 3, 2022                    Respectfully submitted,
Washington, D.C.

                                       MATTHEW M. GRAVES, D.C. Bar No. 481052
                                       United States Attorney

                                       BRIAN P. HUDAK
                                       Chief, Civil Division

                    By:     */s/ Brenda González Horowitz*
                            BRENDA GONZÁLEZ HOROWITZ
                            D.C. Bar No. 1017243
                            Assistant United States Attorney
                            U.S. Attorney's Office, Civil Division
                            601 D Street, N.W.
                            Washington, D.C. 20530
                            Tel: (202) 252-2512
                            Brenda.Gonzalez.Horowitz@usdoj.gov

                            *Attorneys for the United States*