UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JULIE ANN DAHLSTROM, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>        Defendant. | Civil Action No. 22-1165 (JMC) |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

*MATTHEW M. GRAVES*
United States Attorney

*BRIAN P. HUDAK*
Chief, Civil Division

*BRENDA GONZÁLEZ HOROWITZ*
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia

September 30, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 2

    I.     Plaintiffs Concede That There are No Material Facts in Dispute .................................. 2

    II.    Plaintiffs Fail to Undermine USCIS's Searches for Notices to Appear and Rejections.. 4

    III.   USCIS's Search for The Remainder of Plaintiffs' FOIA Request was Adequate ........ 14

    IV.   Plaintiffs Fail to Demonstrate They Are Entitled to Discovery .................................... 18

CONCLUSION ......................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Cases**

*ACLU v. Dep't of Just.*,
  681 F.3d 61 (2d Cir. 2012)..................................................................................... 10

*Adamowicz v. IRS*,
  552 F. Supp. 2d 355 (S.D.N.Y. 2008)..................................................................... 17

*Amnesty Int'l USA v. CIA*,
  728 F. Supp. 2d 479 (S.D.N.Y. 2010)..................................................................... 13

*Broady v. Zanzibar on the Waterfront, LLC*,
  576 F. Supp. 2d 14 (D.D.C. 2008) ............................................................................ 3

*Bigwood v.  Dep't of Def.*,
  132 F. Supp. 3d 124 (D.D.C. 2015) .......................................................................... 7

*Durns v. Bureau of Prisons*,
  804 F.2d 701 (D.C. Cir. 1986) .................................................................................. 4

*FlightSafety Servs. Corp. v. Dep't of Lab.*,
  326 F.3d 607 (5th Cir. 2003) .................................................................................. 10

*Fox v. Strickland*,
  837 F.2d 507 (D.C. Cir. 1988) .................................................................................. 3

*Hamilton Sec. Grp. v. Dep't of Hous. & Urban Dev.*,
  106 F. Supp. 2d 23 (D.D.C. 2000) .......................................................................... 13

*Hedrick v. FBI*,
  216 F. Supp. 2d 84 (D.D.C. 2016) ............................................................................ 5

*In re Clinton*,
  973 F.3d 106 (D.C. Cir. 2020) ................................................................................ 19

*Jackman v. Dep't of Just.*,
  Civ. A. No. 05-1889 (HHK), 2006 WL 2598054 (D.D.C. Sept. 11, 2006) ............... 5

*Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*,
  101 F.3d 145 (D.C. Cir. 1996) .................................................................................. 3

*Jean-Pierre v. Bureau of Prisons*,
880 F. Supp. 2d 95 (D.D.C. 2012) ........................................................................ 12

*Johnson v. Exec. Off. for U.S. Att'ys*,
310 F.3d 771 (D.C. Cir. 2002) .................................................................................. 7

*Jones v. Kirchner*,
835 F.3d 74 (D.C. Cir. 2016) .................................................................................... 4

*Jud. Watch, Inc. v. Dep't of State*,
177 F. Supp. 3d 450 (D.D.C. 2016) ....................................................................... 12

*Kenney v. Dep't of Just.*,
603 F. Supp. 2d 184 (D.D.C. 2009) ....................................................................... 16

*Landmark Legal Found. v. EPA*,
272 F. Supp. 2d 59 (D.D.C. 2003) .................................................................... 14, 16

*McLaughlin v. Dep't of Just.*,
598 F. Supp. 2d 62 (D.D.C. 2009) ......................................................................... 17

*Meeropol v. Meese*,
790 F.2d 942 (D.C. Cir. 1986) .................................................................................. 6

*Military Audit Project v. Casey*,
656 F.2d 724 (D.C. Cir. 1981) ............................................................................. 6, 19

*Miller v. Casey*,
730 F.2d 773 (D.C. Cir. 1984) ................................................................................ 16

*Nation Magazine v. U.S. Customs Serv.*,
71 F.3d 885 (D.C. Cir. 1995) ................................................................................. 19

*Neal v. Kelly*,
963 F.2d 453 (D.C. Cir. 1992) .................................................................................. 3

*NLRB v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978) .................................................................................................. 5

*Physicians for Human Rights v. Dep't of Def.*,
675 F. Supp. 2d 149 (D.D.C. 2009) ......................................................................... 8

*Powell v. IRS*,
255 F. Supp. 3d 33 (D.D.C. 2017) ........................................................................... 5

*Richardson v. D.C. Dep't of Youth Rehab. Servs.*,

    271 F. Supp. 3d 113 (D.D.C. 2017) .......................................................................... 3

*Shapiro v. Dep't of Just.*,

    40 F.4th 609 (D.C. Cir. 2022) .................................................................................. 19

*Stevens v. Broad. Bd. of Govs.*,

    Civ. A. No. 18-5391, 2021 WL 1192675 (N.D. Ill. March 30, 2021) ...................... 10

*Students Against Genocide v. Dep't of State*,

    257 F.3d 828 (D.C. Cir. 2001) .................................................................................. 10

*Tushnet v. ICE*,

    246 F. Supp. 3d 422 (D.D.C. 2017) .......................................................................... 8

*Weisberg v. Dep't of Just.*,

    745 F.2d 1476 (D.C. Cir. 1984) ................................................................................ 9

*Wilson v. Dep't of Transp.*,

    730 F. Supp. 2d 140 (D.D.C. 2010) ........................................................................ 16

## Statutes

5 U.S.C. § 552 .................................................................................................................... 1

8 U.S.C. 1101(a)(15)(T) .................................................................................................... 11

8 U.S.C. 1229b(B)(2) ........................................................................................................ 11

8 U.S.C. § 1367 ........................................................................................................ *passim*

13 U.S.C. § 8(b) ................................................................................................................ 11

## Rules

Federal Rule of Civil Procedure 56 ................................................................................... 1

**INTRODUCTION**

Defendant United States Citizenship and Immigration Services ("USCIS" or "Agency"), through undersigned counsel, respectfully files this reply in support of Defendant's motion for summary judgment ("Def.'s Mot.", ECF No. 28) in this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, litigation. Plaintiffs, through their opposition ("Pls.' Opp.", ECF No. 29) fall far short of demonstrating that there exists any genuine issue of material fact, and judgment as a matter of law in favor of USCIS is due.

As a threshold matter and notwithstanding the requirements of Federal Rule of Civil Procedure 56 ("Rule") and Local Civil Rule 7(h)(1), the first major hurdle standing in Plaintiffs' way is that Plaintiffs critically failed to respond to Defendant's statement of undisputed material facts ("SUMF", ECF No. 28-2). *See generally* Pls.' Opp., ECF No. 29. This fact alone dooms Plaintiffs' attempts at defeating summary judgment, as the Court may therefore credit Defendant's facts as undisputed.

Further, because the Court may credit Defendant's facts, there exists no genuine dispute of material fact as to the sufficiency of USCIS's search, which was reasonably calculated to uncover responsive records. This is particularly true considering the presumption of good faith afforded to the declaration of Cynthia Munita, which was submitted in support of Defendant's motion. Plaintiffs try to distract this Court by arguing that USCIS's motion should be denied because USCIS did not identify the search terms used in every instance, but there is no per se requirement that an agency identify its search terms for every search when it has identified other reasonable methods employed in identifying potentially responsive records. Similarly, Plaintiffs' arguments that USCIS should be ordered to provide a "count" of documents relating to the request for Notices to Appear fails because FOIA does not require an agency to perform research and, in good faith,

USCIS already provided the data Plaintiffs sought in their expedited request in a disclosable format not subject to the disclosure limitations of 8 U.S.C. § 1367. In this vein, Plaintiffs fail to acknowledge that they nevertheless received the information from the database in a format that is acceptable for disclosure pursuant to law. Plaintiffs' requests for additional searches are therefore unwarranted.

Finally, Plaintiffs fail to contend that USCIS has acted in bad faith, a requisite to demonstrating an entitlement to discovery in a FOIA case in this Circuit. Accordingly, these reasons counsel in favor of granting Defendant's motion, and entering judgment as a matter of law in USCIS's favor.[1]

## ARGUMENT

### I.   <u>Plaintiffs Concede That There are No Material Facts in Dispute</u>

At the outset, USCIS is entitled to summary judgment because Plaintiffs fails to demonstrate that any material facts are in dispute, and the undisputed facts and the applicable law warrant judgment for defendant. In conjunction with its motion, USCIS filed its Statement of Material Facts (ECF No. 28-2), consisting of 80 facts supporting its motion and demonstrating the reasonableness of the Agency's search. USCIS also submitted the supplemental declaration of Cynthia Munita, the Associate Center Director and Chief FOIA Officer in the Freedom of Information and Privacy Act Unit for the National Records Center at USCIS. *See* ECF No. 28-4. Plaintiffs fail to address any of Defendant's undisputed facts or otherwise respond to them, allowing the Court to conclude that there exists no genuine dispute of material facts.

---

[1]     Following the filing of their opposition, Plaintiffs filed a notice requesting a hearing on the government's motion. ECF No. 31. Pursuant to Local Civil Rule 7(f), the Court may choose in its discretion to hold a hearing, but is not required to. Defendant takes no position on Plaintiffs' request, but submits that this Court routinely decides these types of motions on the papers.

Local Civil Rule 7(h) requires a party moving for summary judgment to file a "statement of material facts" that it contends are undisputed. LCvR 7(h)(1). In addition, it requires that a party opposing a summary judgment motion must respond to the moving party's statement of facts with a separate "concise statement" of "all material facts" that remain in dispute with "references to the parts of the record relied on to support the statement." *Id*. Where the non-movant fails to "controvert" a statement of undisputed fact made by the movant, the Court may assume that the statement is admitted. *Id*.; *see also Broady v. Zanzibar on the Waterfront, LLC*, 576 F. Supp. 2d 14, 16-17 (D.D.C. 2008). Strict compliance with Local Civil Rule 7(h) is the "norm." *Broady*, 576 F. Supp. 2d at 16. Thus, "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *Richardson v. D.C. Dep't of Youth Rehab. Servs.*, 271 F. Supp. 3d 113, 117 (D.D.C. 2017) (taking as admitted facts in the moving party's statements of undisputed material facts where the non-movant failed to respond with a separate statement of facts as to which it contended there were genuine and material issues); *see also Leopold v. Pittman*, Civ. A. No. 21-0465 (BAH) (D.D.C. Sept. 20, 2022), Memo. Op. (ECF No. 29) at 3 n.3 (noting that plaintiffs controverted "no facts" in defendant's statement of material facts, and thus the "facts set out by defendants may be deemed admitted").

In this case, Plaintiffs are represented by counsel, and thus the principle that *pro se* litigants are given more latitude in procedural matters is inapplicable here. *See Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992); *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988).  Because Plaintiffs failed to address or respond to USCIS's statement of facts, now to identify material disputed issues, "the court would have to . . . engage in time-consuming labor that is meant to be avoided through the parties' observance of" Local Civil Rule 7, to identify material disputed issues." *Jackson v.*

*Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996). But "judges are not like pigs, hunting for truffles buried in briefs or in the record[.]" *Jones v. Kirchner*, 835 F.3d 74, 83 (D.C. Cir. 2016). The Court should not hesitate to require strict compliance with Local Civil Rule 7(h), and credit Defendant's facts due to Plaintiffs' failure to comply with the applicable procedural rules.

## II.   Plaintiffs Fail to Undermine USCIS's Searches for Notices to Appear and Rejections

Regardless of whether the Court credits Defendant's facts as undisputed, the record plainly establishes that USCIS conducted a reasonable search for every item of Plaintiffs' 2022 expedited request, to include the issuance of Notices to Appear and rejections. *See* Def.'s Mot. at 18-21.[2] At the outset, Plaintiffs contend that USCIS failed to conduct a reasonable search for the Notices to Appear and rejections that were produced in the June 2022 production because USCIS failed to identify the search terms used, and, where USCIS did identify search terms, Plaintiffs believe that the search terms were "inadequate." Pls.' Opp. at 10. Plaintiffs' arguments miss the mark for several reasons.

*First*, it bears noting briefly that the crux of Plaintiffs' opposition centers on their fundamental misunderstanding of FOIA. To this end, Plaintiffs repeatedly argue that Defendant violated FOIA because Plaintiffs are entitled to "accurate" information, particularly given their role as "professors" who are "dependent upon receiving accurate information" to conduct their research. *Id*. at 5, 6, 14. Any argument that Plaintiffs should receive information more quickly or more "accurately" than other requesters solely by virtue of their positions as researchers should be quickly dispelled. *See e.g., Durns v. Bureau of Prisons*, 804 F.2d 701, 706 (D.C. Cir. 1986)

---

[2]   Importantly, Plaintiffs makes no reference to the two FOIA requests submitted by Plaintiff Dahlstrom in 2020, thereby abandoning any claims relating to those requests all together. *See also* Def.'s Opp. Prelim. Inj. at 7 n.2, ECF No. 18.

("Congress granted the scholar and the scoundrel equal rights of access to agency records."). Further, Plaintiffs' belief that an agency's search is per se unreasonable because it failed to produce what Plaintiffs believe to be "accurate" information is misguided. FOIA does not require an agency's records to be "accurate." *See e.g., Jackman v. Dep't of Just.*, Civ. A. No. 05-1889 (HHK), 2006 WL 2598054, at *2 (D.D.C. Sept. 11, 2006) (stating that "questions about the authenticity and correctness of the released records are beyond the scope of the court's FOIA jurisdiction"); *see also Hedrick v. FBI*, 216 F. Supp. 2d 84, 95 (D.D.C. 2016); *Powell v. IRS*, 255 F. Supp. 3d 33, 43 (D.D.C. 2017). Instead, the role of FOIA is "to require the release of government records upon request and to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Notably absent from the Supreme Court's instruction in *NLRB* is an entitlement to "accurate" records. The Court should therefore set these threshold arguments aside.

*Second*, Plaintiffs argue that USCIS's search for Notices to Appear and rejection notices in June 2022 was inadequate because there were "no records of rejections between January 1, 2014, through December 1, 2021," yet USCIS later produced records during that timeframe in its supplemental production in August. Pls.' Opp. at 10-11.[3] They further claim that there are inconsistencies in the number of Notices to Appear issued between the search conducted by the

---

[3]    Plaintiffs accusingly state that counsel for USCIS "failed" to correct her representation to the Court following the parties' hearing on Plaintiff's preliminary injunction motion regarding the Government's contention that Notices to Appear did not appear prior to May 2019. Pls.' Opp. at 6 n.1. At the time of the parties' hearing on July 14, 2022, USCIS's initial search had not identified responsive records prior to May 2019. Upon realization that additional components may contain responsive records, in August 2022 the Agency identified and produced additional Notices to Appear, to include certain notices issued before May 2019. The Government corrected the record when it filed its motion for summary judgment, and any contention that undersigned failed to demonstrate candor towards this Court is meritless.

Office of Performance and Quality and the Security Fraud Division. As such, Plaintiffs argue that due to this discrepancy between searches, the "search must be rerun with search terms reflecting Plaintiffs' request for issued [Notices to Appear]." *Id*. at 11.  Not so.  Plaintiffs appear to imply that the Agency's searches were unreasonable because subsequent searches produced responsive records or inconsistent numbers, but that argument has been squarely rejected by the D.C. Circuit. In *Military Audit Project v. Casey*, 656 F.2d 724, 754 (D.C. Cir. 1981), the Circuit "emphatically reject[ed]" the notion that an agency's disclosure of documents it had previously withheld renders its affidavits suspect. That reasoning is applicable here as well. *See also Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986) (rejecting argument that later-produced records call the adequacy of search into question, because "[i]t would be unreasonable to expect even the most exhaustive search to uncover every responsive file"). The *Meeropol* court also opined that the additional releases suggest "a stronger, rather than a weaker, basis" for accepting the integrity of the search, and "we reject, as did the district court, appellants' allegations of bad faith." *Id*.

Indeed, as Ms. Munita explained in her supplemental declaration, Plaintiffs' request for data was appropriately tasked to the Office of Performance Quality due to its focus on data collection and preservation.  Supp. Munita Decl. ¶¶ 15-17. The Office of Performance Quality conducted a reasonable search for the issuance of Notices to Appear associated with T-1 nonimmigrant applications by searching the Integrated Multi Annual Performance System—the operational tool used by USCIS to track office performance for issuance of Notices to Appear. Supp. Munita Decl. ¶¶ 25-26.  The Office of Performance Quality searched the Integrated Multi Annual Performance System by searching the by the appropriate form name used in the system 'I-914 T NI Status.' Supp. Munita Decl. ¶26. Plaintiffs quibble with the use of the Agency's search term, *i.e.*, "I-914 T NI Status," but aside from a conclusory allegation that use of that term is

inadequate, Plaintiffs present no evidence as to what other search terms the Agency should have employed, or why the term "I-914 T NI Status" was not reasonably calculated to lead to responsive records. Pls.' Opp. at 11. Plaintiffs do not dispute that the 2022 expedited request sought I-914 forms relating to T-1 (non-immigrant "NI" visas), making use of the term employed by the Agency appropriate and reasonably calculated to uncover responsive records. This is demonstrably true because by using the term "I-914 T NI Status," the Agency was able to obtain the exact data sought — the number of Notices to Appear issued in response to Forms I-914 filed by T nonimmigrant status individuals. *See* Supp. Munita Decl. ¶ 26. As USCIS previously explained, it was unable to identify data prior to May 2019 simply because that data was not in the Integrated Multi Annual Performance System database, not because USCIS's search was inadequate. Importantly, USCIS identified an additional program office that may have responsive information, and, after conducting additional searches, made a supplemental production to Plaintiffs. *Id*. ¶¶ 50-52. Plaintiffs' sheer speculation that additional records would be identified using unidentified and unknown search terms is simply unsupported.

Plaintiffs' requests to dictate the Agency's search terms should be rejected. It is well established that a FOIA requester "cannot dictate the search terms for his or her FOIA request. Rather, a federal agency has discretion in crafting a list of search terms that [it] believe[s] to be reasonably tailored to uncover documents responsive to the FOIA request. Where the search terms are reasonably calculated to lead to responsive documents, a court should neither micromanage nor second guess the agency's search." *Bigwood v.  Dep't of Def.*, 132 F. Supp. 3d 124, 141, 142 (D.D.C. 2015); *see Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("[The] FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to

micromanage the executive branch."). "Agencies generally have 'discretion in crafting a list of search terms' as long as they are 'reasonably tailored to uncover documents responsive to the FOIA request,'" *Tushnet v. ICE*, 246 F. Supp. 3d 422, 434 (D.D.C. 2017). "[I]n responding to a FOIA request, an agency is only held to a standard of reasonableness; as long as this standard is met, [the] [C]ourt need not quibble over every perceived inadequacy in an agency's response, however slight." *Physicians for Human Rights v. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009). The Court should decline Plaintiffs' invitation to micromanage or second guess USCIS's search based on nothing more than Plaintiffs' speculation that additional records may exist.

The same argument applies with equal force to Plaintiff's contentions regarding USCIS's supplemental productions in August 2022. *See* Pls.' Opp. at 12. Plaintiffs argue solely that USCIS's search for issuance of Notices to Appear through the Security Fraud Division and search for the issuance of rejection notices through the DIDit Reject Tracker System and Access database was flawed because USCIS did not identify search terms. But Plaintiffs' arguments fail to consider that Ms. Munita's supplemental declaration explained how the requested data was derived and that Plaintiffs were provided the specific information sought in their 2022 expedited request. Supp. Munita Decl. ¶¶ 45-47.

Specifically, as described in Ms. Munita's declaration, Vermont Service Center Records Unit staff identified the DIDit Reject Tracker System and Microsoft Access database to search for the issuance of rejection notices as both databases were used to track T-1 nonimmigrant application rejections.  Supp. Munita Decl. ¶¶ 48-51; SUMF ¶¶ 70-72.  Further, Records Unit staff searched these databases by filtering the rejection data to show only rejections issued to T-1 nonimmigrant status applicants within the date frame sought by Plaintiffs (from January 1, 2014 through December 1, 2021 for the DIDit Reject Tracker System and from January 1, 2014 through

December 31, 2021 for the Microsoft Access Database). Supp. Munita Decl. ¶¶ 45-47; SUMF ¶¶ 67-69. Records Unit staff incorporated these results, which were derived based on criteria included in Plaintiffs expedited FOIA request, into Excel spreadsheets that were produced to Plaintiffs in a format not subject to the 8 U.S.C. 1367 disclosure limitations. Supp. Munita Decl. ¶ 51. Since the Agency was able to obtain the exact data sought, Plaintiffs' argument for a different search methodology is inapplicable.

This is also true of the records maintained by the Securities Fraud Division, which "reported that Notices to Appear tracking documents were maintained by end date of the segment of time tracked or the date the file was modified in a folder titled [Notices to Appear] PM Tracking and, when finalized, then moved to a folder titled [Notices to Appear] stat tracking on the Security Fraud Division share drive. Supp. Munita Decl. ¶ 45; *see also* SUMF ¶ 65. Because these records are maintained by date in specified folders, it is reasonable that these folders were searched by date and then tracking for issuance of Notices to Appear associated with the denial of T-nonimmigrant applications. Supp. Munita Decl. ¶ 46. Moreover, the searches were successful as approximately 129 additional spreadsheets and pdfs were produced in response to this search.[4] Plaintiffs' opposition does little to call in to the question the adequacy of these searches, and Plaintiffs fail to explain why their search terms or methodology would have necessarily uncovered different or additional information than that already produced regarding the issuance of rejection notices or notices to appear. Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for the information

---

[4]     Approximately 131 documents were produced in August 2022 in response to the supplemental searches associated with the issuance of Notices to Appear and Rejection Notices. Only two of those documents were associated with the rejection data sought by Plaintiffs. *See* Supp. Munita Decl. ¶¶ 49, 51-53.

requested. *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1486–87 (D.C. Cir. 1984).

Moreover, Plaintiffs' reliance on an out-of-circuit decision holding that an agency failed to conduct a reasonable search because it did not identify search terms is unavailing. *See* Pls.' Opp. at 12 (relying on *Stevens v. Broad. Bd. of Govs.*, Civ. A. No. 18-5391, 2021 WL 1192675, at *1 (N.D. Ill. March 30, 2021)). In *Stevens*, the court pointed to defendants' failure to identify search terms as one of the reasons that defendants failed to meet their burden at summary judgment. *Id*. Notably, the court there found that the supporting declarations were not "reasonably detailed" and did not describe the files searched or the search terms used. *Id*. That is squarely not the case here, as Ms. Munita provided two robust declarations identifying with particularity the specific methodology surrounding the scope of the USCIS's search for potentially responsive records, and identified each office and system that may contain responsive records and how those components executed the searches. The Court should therefore deem Plaintiffs' reliance on *Stevens* unpersuasive.

Further, Plaintiffs argue that USCIS should be ordered to search its Freedom of Information Act Immigration Records System (otherwise referred to as "FIRST") to produce a count of Plaintiffs' expedited request for the issuance of Notices to Appear and rejections.  Pls.' Opp. at 20. But this is a nonstarter as FOIA does not require agencies to conduct research. *See ACLU v. Dep't of Just.*, 681 F.3d 61, 71 (2d Cir. 2012) (reversing district court's decision requiring agency to substitute purportedly neutral phrase composed by court for exempt material because substitution would effectively force agency to create records); *FlightSafety Servs. Corp. v. Dep't of Lab.*, 326 F.3d 607, 613 (5th Cir. 2003) (per curiam) (recognizing that plaintiff's demand that agency "simply insert new information in the place of the redacted information requires the creation of new agency records, a task that the FOIA does not require the government to perform"); *Students*

*Against Genocide v. Dep't of State*, 257 F.3d 828, 837 (D.C. Cir. 2001) (rejecting plaintiff's argument that "even if the agencies do not want to disclose the photographs in their present state, they should produce new photographs at a different resolution in order to mask the [classified] capabilities of the reconnaissance systems that took them").

USCIS explained in the first instance that the records initially created in response to Plaintiffs' FOIA requests could not be produced due to the statutory disclosure restrictions of 8 U.S.C. § 1367 and that, in good faith, it conducted a supplemental search in the attempt to provide the information requested in a producible format. Ms. Munita explained in both her original declaration submitted in opposition to Plaintiffs' request for emergency relief and in the supplemental declaration submitted in conjunction with Defendant's opening brief that the responsive records collected from the FIRST database could not be disclosed because to do so would violate 8 U.S.C. § 1367.  *See* 8 U.S.C. § 1367 (addressing penalties for improper disclosure of *any* information that relates to those who are beneficiaries of an application for relief under section 101(a)(15)(T) under the Immigration and Nationality Act); *see also* Munita Decl. ¶ 48 n.2, ECF No. 18-1 at 17; *see also* Supp. Munita Decl. ¶¶ 11-13; SUMF ¶¶ 24-27.

In accordance with Section 1367, "in no case may the Attorney General, or any other official or employee of the Department of Justice, the Secretary of Homeland Security, the Secretary of State, or any other official or employee of the Department of Homeland Security or Department of State (including any bureau or agency of either of such Departments) . . ." permit disclosure "to anyone . . . of any information which relates to an alien who is the beneficiary of an application for relief under paragraph (15)(T), (15)(U), or (51) of section 101(a) of the Immigration and Nationality Act [8 U.S.C. 1101(a)(15)(T), (U), (51)] or section 240A(b)(2) of such Act [8 U.S.C. 1229b(B)(2)]." 8 U.S.C. § 1367(a) (1)-(2). Pursuant to 13 U.S.C. § 8(b), "the Secretary

may furnish copies of tabulations and other statistical materials which do not disclose the information reported by, or on behalf of, any particular respondent . . . ." Spp. Munita Decl. ¶ 13 n.4.

To the extent that Plaintiffs request that USCIS now conduct a search of the FIRST database for "evidence of the number of [Notices to Appear] and Rejections issued," Pls.' Opp. at 16, FOIA neither requires USCIS to conduct research nor provide answers to questions Plaintiffs may pose regarding the data, and Plaintiffs point to no caselaw in support of their argument. That is because the caselaw holds squarely to the contrary. *Jud. Watch, Inc. v. Dep't of State*, 177 F. Supp. 3d 450, 456 (D.D.C. 2016) (finding that "[a] question is not a request for records under FOIA and an agency has no duty to answer a question posed as a FOIA request."), *aff'd*, 681 F. App'x 2 (D.C. Cir. 2017); *Jean-Pierre v. Bureau of Prisons*, 880 F. Supp. 2d 95, 103 (D.D.C. 2012) (concluding that request for objective pieces of information, such as "who gave the order" and "on what day," are not "cognizable under FOIA, because they ask questions calling for specific pieces of information rather than records"). It is undisputed here that the information sought by Plaintiffs falls directly under the scope of Section 1367 as the underlying FOIA requests sought information relating to aliens who are the beneficiaries of a T-1 visa. Thus, there is no genuine dispute that an order requiring USCIS to disclose the information as it exists in the FIRST database would require the Agency to violate the law. Nor is USCIS required to respond to requests by creating records, such as by modifying exempt information to make it disclosable, but that is precisely what Plaintiff's request. Pls.' Opp. at 16. For these reasons, Plaintiffs' demand that the Court order USCIS to search through the FIRST database to conduct a count of the issuance of rejection notices and Notices to Appear should be denied.

Notwithstanding USCIS's position that the information contained within the FIRST

database could not be produced, USCIS nevertheless performed a supplemental search so that it could produce the requested information in "a tabulation or statistical format that does not disclose the information reported by, or on behalf of, any particular respondent in accordance with the statute." Munita Decl. ¶ 48; Supp. Munita Decl. ¶ 13. Plaintiff Dahlstrom confusingly states in the declaration submitted in connection with Plaintiffs' opposition that she was "surprised" to receive Excel spreadsheets following the parties' meet and confer session (Dahlstrom Decl. ¶ 5, ECF No. 29-1), yet seemingly ignores that during that same phone call, USCIS and Defendant's counsel explained that the records identified through the FIRST system could not be produced as is, and would require tasking a subsequent search so that the Agency could produce the requested format in compliance with 8 U.S.C. § 1367. *See* Def.'s Not., ECF No. 23-1.

Finally, Plaintiffs state in wholly conclusory fashion that USCIS did not "search for statistical analyses of Requests (a) through (f) in either the June or August productions." Pls.' Opp. at 13. Plaintiffs once again ignore the fact that Plaintiffs willingly modified the scope of their request (and importantly, withdrew certain portions of the 2022 expedited request as well as the two 2020 requests) throughout negotiations with USCIS in order to receive documents more expeditiously. *See* Supp. Munita Decl. ¶¶ 8-10; *see also* SUMF ¶¶ 13-15. Indeed, as explained in more detail below, Plaintiffs' email correspondences with the Agency and its FOIA staff confirm that Plaintiffs sought statistical data—not analysis—for items (a) through (f) of the 2022 request. *See id.*; *Hamilton Sec. Grp. v. Dep't of Hous. & Urban Dev.*, 106 F. Supp. 2d 23, 27 (D.D.C. 2000) ("Given the exchange of correspondence between counsel and the agency relating to the scope of the request, there is no basis for plaintiff's claim that defendant should have understood that the request for a [single, specific record] was meant to include additional [records]."), *aff'd per curiam*, No. 00-5331, 2001 WL 238162 (D.C. Cir. Feb. 23, 2001); *see also Amnesty Int'l USA v. CIA*,

728 F. Supp. 2d 479, 499 (S.D.N.Y. 2010) (holding that plaintiffs cannot "rely on the argument that the CIA should have known what information Plaintiffs were seeking, for an agency receiving a FOIA request 'is not required to divine a requester's intent'" (quoting *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003)). As such, Plaintiffs cannot claim now that they should have received records that were not contemplated by the plain language of their agreement with USCIS.

In sum, Plaintiffs' challenges to USCIS's search on the Notices to Appear and rejections fall short of demonstrating a genuine dispute of material fact. Accordingly, USCIS is entitled to judgment as a matter of law.

## III.   USCIS's Search for The Remainder of Plaintiffs' FOIA Request was Adequate

USCIS conducted a reasonable search for all remaining items of Plaintiffs' expedited request to include requests for statistical data and analysis, and Plaintiffs' opposition concedes that Plaintiffs modified the scope of their request in "an effort to speed up the production of her FOIA request." Pls.' Opp. at 17. Indeed, Plaintiffs repeatedly emphasize that in subsequent conversations with USCIS, Plaintiffs modified the request's scope to receive statistical *data*, and there is no dispute that section (g) of the 2022 expedited request sought statistical analysis. *See id.*; *see also* Def.'s Mot. at 22; Supp. Munita Decl. ¶ 28. Plaintiffs state that Plaintiff Dahlstrom used the term "data" to describe the statistical analysis in subsection (g) of the request. This comports with USCIS's understanding, and aligns with USCIS's interpretation of the 2022 expedited request, where USCIS not only conducted a search (and produced) responsive statistical data, but also conducted a search for statistical analysis. Def.'s Mot. at 22-23.

Yet, even if Plaintiffs had not modified their request to seeking only data, Defendant reasonably interpreted Plaintiffs' request under item (g) as seeking documents with data regarding

the issuance of rejections, Requests for Evidence, Notices of Intent to Deny and average processing times based on previous clarifications of near identical requests set forth in the previous 2020 FOIA requests.  In those clarifications, the request for statistical analysis was almost identical to item (g) clarified by Plaintiff Dahlstrom as "seeking records that identify the number of T-1 nonimmigrant status application rejections, [Requests for Evidence], and [Notices of Intent to Deny]" as well as "records that identify the average processing time from receipt of application to adjudication[.] Supp. Munita Decl. ¶ 30.

Plaintiffs now claim, however, that Plaintiffs "wanted statistical analysis for all items." Pls.' Opp. at 17. But Plaintiffs' 2022 expedited request sought statistical analysis for only one section of the request—section (g), not for every category listed within the 2022 expedited request. *See* SUMF ¶ 1; Supp. Munita Decl. ¶ 7. USCIS addressed this argument in its opening brief, noting that the communications between USCIS and Plaintiffs in March and April 2022, make clear that USCIS offered to provide, and Plaintiffs agreed to accept, data in response to each item of their 2022 Request. Supp. Munita Decl. ¶ 28. Plaintiffs seemingly conflate the terms "data" and "analysis," but Plaintiff Dahlstrom was undisputedly clear in her communications with USCIS regarding her request for data. Indeed, Plaintiffs point to Plaintiff Dahlstrom's April 1, 2022, communication with USCIS in support of their argument that they wanted statistical analysis as to all categories of records, but that argument is belied by the record. *See* Pls.' Opp., Ex. 11 (ECF No. 29-4).

For example, on March 30, 2022, the National Records Center FOIA staff reached out to Plaintiff Dahlstrom inquiring "[f]or items a-f on your request, are you requesting the actual denial letters, [Requests for Evidence], [Notice of Intent to Deny] [sic] etc., or are you only looking for statistical data?"  Plaintiff Dahlstrom responded the following day agreeing to seek "statistical data

for items (a)-(f) in place of actual documents, if it will allow the agency to respond more expeditiously to the expedited request." *See* ECF No. 18-1, Munita Decl. ¶ 43, Ex. K; *see also* Pls.' Opp., Ex. 11 (ECF No. 29-4). Plaintiff Dahlstrom added "[a]lso, to confirm, we are requesting data on T-1 applications from January 1, 2014 through December 31, 2016, in item (g)" and noted "[i]t is true that this is distinct from the items requested in the 2020 requests." *See id*. Plaintiff Dahlstrom herself clarified that the request for statistical analysis to her means the number of the items issued. Thus, even under Plaintiff Dahlstrom's definition, statistical analysis equates to the number of items issued for each category of the request, which comports with USCIS's interpretation of her request for statistical data.

Given these prior clarifications and the plain language of Plaintiffs' modification, Defendant's interpretation was reasonable. Plaintiffs' repeated use of the word "data" over "analysis" in their communications with USCIS's FOIA staff further underscores this point. *See* Def.'s Mot. at 24 (citing *Wilson v. Dep't of Transp.*, 730 F. Supp. 2d 140, 152 (D.D.C. 2010) (finding, due to ambiguity in plaintiff's original request, that the agency sought clarification by proposing a reasonable interpretation of the request's scope, and once plaintiff agreed to the clarification, he was prevented from later asserting that he meant something else with respect to the scope of the request); *Kenney v. Dep't of Just.*, 603 F. Supp. 2d 184, 189 (D.D.C. 2009) ("Plaintiff cannot allege that the agency failed to produce responsive records, when the records he now identifies fall outside the scope of his appropriately narrowed request.")).

Plaintiffs attempt to make hay with USCIS's interpretation of Plaintiffs' modification, arguing that the Agency is under an obligation to interpret the request broadly. Pls.' Opp. at 18. Defendant does not dispute that FOIA requires the Agency to liberally construe and interpret the underlying request. *See, e.g., Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984) (emphasizing

that agency is required to read FOIA request as drafted, "not as either [an] agency official or [requester] might wish it was drafted"). Courts have nevertheless upheld agency decisions to limit the scope of a request when the agency acted reasonably in interpreting what the request sought. *See, e.g., McLaughlin v. Dep't of Just.*, 598 F. Supp. 2d 62, 66 (D.D.C. 2009) (concluding "[n]o reasonable fact finder could imply agency bad faith" from practice of generally treating requests as requests for non-public records and requiring submission of additional request for responsive public records); *Adamowicz v. IRS*, 552 F. Supp. 2d 355, 362 (S.D.N.Y. 2008) (deeming agency's interpretation of request reasonable when agency determined that request seeking records pertaining to tax audit did not include records pertaining to appeal of tax audit).

As noted herein and in Ms. Munita's supplemental declaration, USCIS conducted a reasonable search in response to Plaintiffs' expedited request by tasking the search for data under items (a) thought (g) to Office of Performance and Quality, which conducted a reasonable search of the Integrated Multi Annual Performance System and Computer Linked Application Information Management System 3 and recorded the results of those searches, as appropriate, in an Excel spreadsheet that was produced to Plaintiffs, in its entirety. Supp. Munita Decl. ¶ 18. USCIS also identified the Office of Policy and Strategy and Service Center Operations Directorate as potentially maintaining records responsive to Plaintiffs expedited FOIA request. *Id*. ¶¶ 31-33. The Policy Research Division conducted a search of its shared drive and email of staff it determined may possess requested information under item (g) using terms to include "T-1 study," T analysis" and "T statistics," but did not locate any responsive documents. *Id*. ¶ 35. Besides the supplemental searches for issuance of rejection notices and Notices to Appear, the Service Center Operations Directorate also directed item (g) to the Humanitarian Branch and the two Vermont Service Center Divisions, which conducted a search of their shared drives, as well as the hard drive

and email of staff it determined may possess documents with the requested information. Supp. Munita Decl. ¶¶ 36-39. These offices used terms common to the T-nonimmigrant program within the Branch and terms contained within the FOIA request to include, "T-1," "T-1 nonimmigrant," "T-1 status," "T-1 nonimmigrant status," "data and reports," "Requests for Evidence," and "Notices of Intent to Deny," among others. *Id*. ¶¶ 37-39. In addition to providing an Excel spread sheet in response to its search, the Service Center Operations Directorate also instructed that publicly available information is available on its website and USCIS provided the same to Plaintiffs in June 2022.  *Id*. ¶ 40. Plaintiffs do not address these facts in their opposition at all, and make no effort to undermine USCIS's search in accordance with the Agency's reasonable interpretation of their request. As such, Plaintiffs' fail to demonstrate that USCIS's search was unreasonable.

In sum, there is no genuine dispute that USCIS reasonably interpreted the scope of Plaintiffs' request based on the plain language of the email communications between the parties and prior clarifications terms identified by Plaintiffs, and Defendant produced the requested information. Accordingly, USCIS is entitled to judgment as a matter of law.

## IV. <u>Plaintiffs Fail to Demonstrate They Are Entitled to Discovery</u>

As an end-run around FOIA, Plaintiffs ask that this Court grant "limited discovery regarding Defendant's databases that contain information responsive to Plaintiffs' expedited request for [Notices to Appear] and Rejections, including statistical analyses of Requests (a) through (f)."  Pls.' Opp. at 7, 15. Notably, Plaintiffs make no substantive argument for discovery or provide any support for their contention that they are entitled to discovery. Instead, Plaintiffs' state in passing that the Court should "alternatively" grant their request. Plaintiffs' request finds no support in the law and should be rejected.

Discovery is the exception, not the rule, in FOIA cases. *See* Def.'s Mot. at 16 n.4. The D.C. Circuit has repeatedly made clear that "discovery in a FOIA case is rare" and courts should generally order it only "where there is evidence—either at the affidavit stage or (in rarer cases) before—that the agency acted in bad faith in conducting the search." *In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020) (internal quotation marks omitted). Discovery is not warranted "when it appears that discovery would only . . . afford [the plaintiff] an opportunity to pursue a bare hope of falling upon something that might impugn the affidavits." *Military Audit Project*, 656 F.2d at 751-52 (affirming discovery denial where plaintiffs failed to raise "substantial questions concerning the substantive content of the [defendants'] affidavits"). And, even where the Circuit has found an agency's affidavits to be inadequate to support summary judgment, it has held that the appropriate remedy is usually to allow the agency to "submit further affidavits" rather than to order discovery. *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995); *see also Shapiro v. Dep't of Just.*, 40 F.4th 609, 615 (D.C. Cir. 2022) (district court did not abuse its discretion in denying plaintiff's request for extensive document productions and depositions of FBI personnel).

Plaintiffs do not even suggest that USCIS has acted in bad faith such that discovery would be warranted. Indeed, Plaintiffs advance no argument at all in support of their "alternative" request for discovery, and make no effort to demonstrate that they are entitled to relief that is undoubtedly the exception and not the norm in a routine FOIA case such as this one. Plaintiffs cite to only one out of circuit case in the "legal standard" section of their opposition noting that discovery may be warranted when challenging the scope of an agency's search. Pls.' Opp. at 9. But Plaintiffs make no effort to grapple with controlling Circuit precedent requiring Plaintiffs to raise substantial questions regarding USCIS's declarations, and Plaintiffs have not, because indeed they cannot,

suggest bad faith. While USCIS contends that it has met its burden under FOIA, if the Court is inclined to deny Defendant's motion, it should do so without prejudice and allow Defendant to supplement the record in support of its search, rather than order discovery into the scope of USCIS's search methodology.

At bottom, Plaintiffs fall far short of demonstrating an entitlement to discovery. As such, the Court should determine that discovery is not warranted.

## CONCLUSION

For the reasons stated herein and in Defendant's opening motion, the Court should grant Defendant's motion and enter judgment as a matter of law on Plaintiffs' FOIA claims.

\*   \*   \*

Dated: September 30, 2022          Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:   */s/ Brenda González Horowitz*
BRENDA GONZÁLEZ HOROWITZ
D.C. Bar No. 1017243
Assistant United States Attorney
U.S. Attorney's Office, Civil Division
601 D St., N.W.
Washington, D.C. 20530
Tel: (202) 252-2512
Brenda.Gonzalez.Horowitz@usdoj.gov

*Attorneys for the United States*